In re HIGBEE CO.

No. 36119.

District Court, N. D. Ohio, E. D.

Feb. 16, 1943.

Jones, Day, Cockley & Reavis, of Cleve-
land, Ohio (Gardner Abbott and Frank E.

Joseph, both of Cleveland, Ohio, of counsel), for debtor.

McKeehan, Merrick, Arter & Stewart, of Cleveland, Ohio (C. K. Arter, L. C. Wykoff, and K. A. Taft, all of Cleveland, Ohio, of counsel), for Bradley and Murphy.

Bulkley & Butler and Robert W. Purcell, of Cleveland, Ohio (Robert J. Bulkley and James A. Butler, both of Cleveland, Ohio, of counsel), for Young and Kirby and another.

Samuel Spring, of New York City, for Frank F. Kolbe.

Richard B. Ainsworth, of Cleveland, Ohio, for Securities & Exchange Commission.

JONES, District Judge.

■■ While it is a rule well established that the findings of the Master on disputed facts shall be accepted, unless clearly erroneous (General Order in Bankruptcy 47, 11 U.S.C.A. following section 53; Rules of Civil Procedure, 28 U.S.C.A. following section 723c, rule 53(e) (2); and, although the exceptions do not fully respond to the usual practice of specifically and definitely challenging the Master's findings; yet the fact that this hearing and the decision reached will dispose not only of the issue of ownership of the Higbee securities raised by the claims filed in the Higbee bankruptcy, but also the issues involved in the case of Young and Kirby v. Bradley and Murphy et al., No. 20,828, originally filed in this court May 28, 1941 (amended complaint August 11, 1941), it is deemed advisable to consider and decide the whole matter as submitted upon the merits. However, this treatment will not affect the weight and effect of the Master's findings where they have been made upon conflicting testimony, upon consideration of credibility of witnesses, and where they are consistent with reasonable inferences and conclusions to be drawn from the evidence. The rule, to this extent, must be adhered to, since the Master saw and heard the witnesses testify and was in better position to judge of their candor and the weight to be given their testimony.

It is not thought necessary to re-state the facts and the history of the matters out of which this controversy arose, since they fully appear in the Master's report. The controversy is one over the ownership of the so-called "junior indebtedness" and old common stock of the Higbee Company.

Bradley and Murphy have had the legal title thereto since May 15th or June 4th, 1937, by purchase from Ball or the Ball Foundation. They obtained possession of the Higbee notes and stock by payment of the balance of the purchase price to Terminal and Shaker Heights Realty Company (formerly Midamerica) June 4th, 1942. Young and Kirby and Kolbe claim ownership of these securities on the basis of an alleged constructive trust and by reason of a breach of alleged fiduciary relationship with them and with Terminal and Shaker Heights Realty Company. The legality of the Higbee reorganization is not in any way involved. Final judgment and confirmation of the plan of reorganization previously has been entered and reorganization has been substantially effected.

■ As an initial consideration, I think that if Midamerica (or Terminal) had any claim or interest in the Higbee securities, which under the evidence I think it did not have, the request for and voluntary acceptance June 3rd-5th, 1942, of the balance due on the purchase price of the securities by Terminal, then practically wholly owned by Young and Kirby, and the simultaneous delivery of the securities to Bradley and Murphy, effectively waived and cancelled any equitable claim to the securities such as is now asserted. This voluntary transfer recognized the validity of the Ball sale to Bradley and Murphy and no reservation by Terminal of any further or equitable interest in the securities was made.

But it is urged that Terminal had two rights or claims in respect of the Higbee securities and could exercise either one or both; that in accepting payment of the balance on the Bradley-Murphy note and the delivery of possession of the Higbee securities to Bradley and Murphy, the legal owners thereof, it did not thereby cancel, waive or surrender its right to be declared the equitable owner of the securities. But this seems to me to be a rather tenuous position, since the acceptance of the balance due on the Bradley-Murphy note, and the transfer and delivery of the Higbee securities to the legal owners, constituted, as I think, an act of ratification of the transaction which carried with it any equitable claim to ownership.

■ But upon a stronger ground I think any claim by Terminal to equitable ownership must fail upon considerations hereafter to be stated. The Bradley and Murphy note pledged for the Higbee junior in-

debtedness and common stock belonged to and was held by Ball or the Ball Foundation, and not Terminal, since it appears that Ball did not transfer to Terminal the Bradley and Murphy note until March 2, 1942. A claim to the junior indebtedness was filed in the Higbee reorganization by Ball or the Ball Foundation, based upon the unfulfilled obligation of Bradley and Murphy for the balance of the purchase price. Terminal made no claim to the junior indebtedness or the common stock until long afterward (March 26, 1942). When Bradley and Murphy purchased the securities, they bought them from the Ball Foundation and not from Midamerica. Ball took their down payment and held their note and, considering the values of the period, the purchase price constituted, as I think, a rather substantial amount.

It is apparent from the facts that Ball, or the Ball Foundation, whichever it was, wholly owned or controlled Midamerica and all of the securities held by it, and prior to the sale of the stock of Midamerica to Young and Kirby, Midamerica had made a partial liquidation by withdrawing the Higbee securities and transferring them to the Ball Foundation. This being so, it must be conceded that Ball could sell the Higbee securities to whomever he chose since he had made no commitment to the Young and Kirby syndicate. That Young and Kirby fully understood the sole owners of Higbee notes and stock to be Ball, or the Ball Foundation, is clearly reflected in the evidence of the conduct of the negotiations for the purchase by Young and Kirby of the Van Sweringen properties.

In these circumstances, I am unable to accept the principle as applicable here, that Bradley and Murphy, by remaining as directors of Midamerica (Terminal), after the sale of its stock to Young and Kirby on May 5, 1937, placed themselves in such fiduciary relationship to that company as to have disabled them from completing and closing the earlier Higbee negotiations with Ball. As noted above, the Higbee securities had been liquidated out of the Midamerica portfolio before the sale of the Midamerica stock to Young and Kirby. The Higbee securities constituted property which Ball had the right to sell, and I can find no support in the evidence for the claim that Bradley and Murphy were disabled from buying such property for themselves, even though they continued as directors of Midamerica subsequent to May 5,

1937. The acquisition of the securities by Bradley and Murphy, as the result of negotiations commencing in January of 1937, was not in conflict with any duties as directors of Midamerica or adverse to the interests of that company. Midamerica had no real interest, through Cleveland Terminals Building Company, in the Higbee Company or in its store building. See Master's findings 29–32. The Higbee securities were assets wholly free from the Van Sweringen properties, and neither Young and Kirby, nor Midamerica in the Ball sale to Young and Kirby on May 5, 1937, acquired any claim, legal or equitable, as to them, nor any right of any kind therein. I can find no basis for a constructive trust running to Midamerica (or Terminal).

Thus, the only question to be resolved further is whether Bradley and Murphy were so committed to Young and Kirby by a fiduciary relationship as to make the Bradley and Murphy purchase from Ball of the Higbee notes and stock one which must be held to have been in violation of their previous commitment to Young and Kirby, resulting in a constructive trust in respect of the Higbee securities so purchased.

■ It appears from the evidence that Bradley and Murphy and Young and Kirby had some conferences and discussions respecting the future status of Bradley and Murphy in the event the Young and Kirby syndicate acquired the Van Sweringen properties from Ball. Bradley and Murphy had been Van Sweringen employees and associates, and later had represented Ball until the sale by Ball to Young and Kirby in May, 1937. The claimants concede in their printed brief (Pages 9, 10 and 11) that Murphy represented Ball in the negotiations for the sale of the Van Sweringen securities to the syndicate. Certainly, in such circumstances, it cannot now be claimed that Bradley and Murphy were fiduciary agents of the syndicate. It is admitted that Kolbe, acting for the Young and Kirby syndicate, knew in March, 1937, that Ball would not include the Higbee securities in any sale to the syndicate, and they never were intended to be included in such sale. This is conceded.

■ It is the exceptors' contention that Bradley and Murphy in early May, 1937, transferred their allegiance to Young and Kirby from Ball upon the sale of the Van Sweringen securities to Young and Kirby, and that Bradley and Murphy thus became the fiduciary employees of Young and Kir-

by and owed the duty of loyalty and of refraining from acquiring for themselves any property which should by acquisition from Ball or by right belong to the Young and Kirby syndicate, or be adverse to their interest.

There is considerable conflict in the evidence as to the real relationship and as to what extent Bradley and Murphy were obligated or limited by it; but it seems reasonable to conclude from the undisputed evidence that Bradley and Murphy began negotiations with Ball to acquire the Higbee securities as early as January, 1937. They then were not representing Young and Kirby, or the syndicate. The negotiations continued in March, April and May, resulting in a sale to them by Ball of the Higbee securities on May 15, 1937, and a bill of sale consummating the agreement was executed June 4, 1937. Young and Kirby acquired the Van Sweringen properties (not including the Higbee securities) May 5, 1937. Thus whatever failure, if such there was, in respect of their duty to Young and Kirby, occurred between May 5th and 15th, 1937. At this critical time, Bradley and Murphy had practically concluded negotiations for the purchase of the Higbee securities from Ball (May 15, 1937), and as early at least as March 15, 1937, had made arrangements with Ball for their purchase and before any such claimed relationship existed.

It is in evidence that Young and Kirby, through Kolbe, knew in March, 1937, that Ball was negotiating for the sale of the Higbee securities to two Cleveland men "who had lost heavily but had stuck to the Van Sweringen ship and hoped to rehabilitate themselves" financially. It was testified that Bradley and Murphy then were named as the two Cleveland men. Kolbe denied that the purchasers were named. In response to the claim of duplicitous conduct, the Court has considered whether Bradley and Murphy owed any duty to Young and Kirby, under these circumstances, to disclose their negotiations for acquisition of the Higbee securities, beyond what the evidence shows had been disclosed and that they did disclose, insofar as it relates to the subsequent relationship of the parties. Certainly, Bradley and Murphy, under the evidence, were not to become employees of Young and Kirby unless and until the Van Sweringen properties were purchased by the Young and Kirby syndicate, which did not eventuate until May 5, 1937.

Until that date, at least, Bradley and Murphy were free to acquire whatever they could on their own account. They owed no duty to Young and Kirby. They were not members of, nor employed by, the syndicate. They had at that time practically concluded the negotiations for the purchase of the Higbee securities.

It does not appear from any evidence urged upon the Court that any duty devolved upon Bradley and Murphy to refrain from continuing their negotiations with Ball to acquire the Higbee notes and stock. Young and Kirby knew that Ball had agreed to sell it to the two Cleveland men, former associates of the Van Sweringens. Bradley and Murphy, in completing the acquisition of the Higbee securities, were not in competition with Young and Kirby. These securities had been withdrawn from the Van Sweringen empire before Young and Kirby acquired the residue from Ball. No mandate or duty had arisen out of the Bradley-Murphy employment which compelled them to refrain from completing their negotiations for the Higbee securities, begun in January, 1937. Under the evidence, no such limitation upon the right of Bradley and Murphy to complete acquisition of the Higbee securities for themselves was implicit in their employment by Young and Kirby.

Ownership of these Higbee securities by Bradley and Murphy was not adverse to the interests of Young and Kirby. While Kolbe, on their behalf, had discussed the acquisition of the Higbee securities, no real effort ever was made to acquire them or include them in the Van Sweringen properties, and it appears from the evidence that no genuine interest was exhibited in acquiring them at any time prior to their purchase by Bradley and Murphy; nor did Young and Kirby make any claim to equitable ownership until May, 1941, although, under the evidence most favorable to them, they knew of the Bradley-Murphy purchase in June, 1937.

If, as Young and Kirby claim, Bradley and Murphy were engaged by them to protect and safeguard the interests which Young and Kirby had acquired from Ball, this did not imply that Bradley and Murphy could not consistently, with their obligation to Young and Kirby, acquire the Higbee securities which earlier had been withdrawn by Ball and held for sale to Bradley and Murphy. The Higbee securities were definitely taken out of the Van

Sweringen properties by Ball and formed no part of the Van Sweringen properties thereafter sold to Young and Kirby. These securities were not essential to the Van Sweringen empire, otherwise Young and Kirby would have insisted upon their inclusion in the sale to them. This statement is made because it seems to be implied in the exceptors' argument and brief that the Higbee securities constituted an essential part of the Van Sweringen properties, and that no one associated with Young and Kirby would be at liberty to acquire them except on behalf of Young and Kirby, although the latter had no apparent objection to their sale by Ball to a stranger.

Frankly, I do not see how the ownership of the Higbee securities would be any more adverse to Young and Kirby's interests, in the hands of Bradley and Murphy, than would be the case if Ball had sold them to strangers having no interest in safeguarding the Van Sweringen properties acquired by Young and Kirby from Ball. A breach of trust or the failure to safeguard the interests of Young and Kirby in the Van Sweringen properties purchased by Young and Kirby from Ball would pre-suppose action by Bradley and Murphy inimical or adverse to the interests of Young and Kirby, or a taking advantage of their employment by Young and Kirby for their own benefit. Neither of these were involved in the Bradley and Murphy purchase of the Higbee notes and stock from Ball. Young and Kirby knew as early as March, 1937, that the Higbee securities were not to be sold to them, but were to be sold to two Cleveland men. The securities had been withdrawn from the Van Sweringen properties by Ball for that purpose. Bradley and Murphy gained no advantage for themselves by reason of their employment with Young and Kirby. The Higbee notes and stock were earmarked for their account by Ball before their employment by Young and Kirby. Under the evidence, I can find nothing in their employment by Young and Kirby that required them to refrain from acquiring the Higbee securities in accordance with negotiations commenced several months before their employment by Young and Kirby.

Under the conflicting, and under undisputed evidence, considering it in the light most favorable to the exceptors, I am unable to find that a case of equitable ownership has been made out. The Higbee securities never were the subject matter of trust as between Young and Kirby and Kolbe, or Midamerica, and Bradley and Murphy. Neither Young and Kirby or Midamerica had any right or interest in them when the Ball Foundation sold them to Bradley and Murphy, or when Ball sold the Van Sweringen properties to the Young and Kirby syndicate. Thus, the rule respecting accountability in trust relationship has no application to the facts and circumstances of this case. Whatever may have been Bradley and Murphy or Ball's reason or motive for not advising Young and Kirby earlier that Bradley and Murphy were the persons negotiating for and acquiring the Higbee securities, the record does not show that Bradley and Murphy, when they were negotiating for the Higbee securities, owed any fiduciary relationship or duty to Young and Kirby or their syndicate in respect of those securities.

The decision of this Court and the Circuit Court of Appeals in the Van Sweringen cases does not, as I think, furnish support for the exceptors' claims here. In those cases it was held that the Van Sweringens could not, by the device of separate corporate entity, acquire at distress values the obligations or securities of their own companies and prove them as claims in their own reorganization at more than the value placed upon them by their own appraisals. While, in the view I take of the facts and circumstances in evidence, there is no necessity for determining whether Young and Kirby's delay in presenting their claim for so long a period constitutes laches, where equitable relief is asked, yet in any event certainly Young and Kirby had knowledge of the Bradley and Murphy claim to ownership of the Higbee securities in June, 1937, and they took no steps whatever to assert such a claim, as now is presented, for almost four years thereafter, or May 28, 1941.

■ If it were to be found that Bradley and Murphy had a fiduciary relationship to Midamerica because of their official status, it would be difficult to see how they gained any advantage in purchasing the Higbee securities for five hundred thousand dollars more than Midamerica had carried them on its books, and they were allowed only in the amount which they paid for them. No justifiable reason has been advanced why Young and Kirby, with knowledge of the Higbee reorganization and the assertion of legal and complete ownership of the Higbee junior indebtedness and common stock by Bradley and Murphy in that proceedings,

took no action for four years to challenge such ownership. If other ground for rejection of such claim were not adequate, this unreasonable lapse of time would support, or alone sustain, a denial of the equitable relief here sought.

■ The order permitting the equitable claim of Young and Kirby to ownership to be filed in the reorganization proceeding over the bar order of October 6, 1939, did not operate to nullify defenses to the claim of Young and Kirby. The Court's action was taken for the purpose of affording a full hearing on the merits of the claim, including the pending civil suit, No. 20,828.

From a hearing and full review of the exceptions, and a consideration of the report of the Master, briefs and oral argument, it is my conclusion that the exceptors have not made out the case asserted, and that they are not entitled to the relief or judgment sought. It has not been possible, nor do I deem it essential, to discuss every phase of the controversy and implications sought to be drawn from the evidence, but the Court has examined the Master's findings in the light of the evidence and the exceptions taken. Considerable of the evidence was conflicting; much is really not in dispute; but, fairly appraised, I think that the findings and conclusions of the Master are adequately supported by and respond to the evidence, and they are approved and adopted and the report confirmed.