## YOUNG *v.* HIGBEE COMPANY ET AL.

No. 342. Argued February 1, 1945.—Decided February 26, 1945.

---

[9] Compare *Richmond* v. *Irons,* 121 U. S. 27, 48, 50.

*Mr. Robert W. Purcell,* with whom *Mr. James A. Butler* was on the brief, for petitioner.

*Mr. Marvin C. Harrison* for respondents.

*Solicitor General Fahy, Messrs. Roger S. Foster, Milton V. Freeman, Theodore L. Thau* and *David Ferber* filed a brief on behalf of the Securities & Exchange Commission, as *amicus curiae,* urging reversal.

MR. JUSTICE BLACK delivered the opinion of the Court.

This case presents the question of the accountability of stockholders who objected to the confirmation of a plan of reorganization under the Bankruptcy Act,[1] and abandoned their appeal for a consideration to themselves, where the basis of the appeal was that, if successful, it would benefit the entire class.

The Higbee Company, a department store with assets of more than six million dollars, filed a voluntary petition

---

[1] The proceedings were begun in 1935 under § 77B, 11 U. S. C. 207. June 22, 1938, Congress passed the Chandler Act, and the provisions of Chapter 10 of the Act were thereafter applicable to these proceedings. 52 Stat. 883–905, 11 U. S. C. 501–676.

for reorganization. It had three types of stocks: common, and first and second preferred. Two of its directors, Bradley and Murphy, claimed that they had acquired by purchase a junior debt against the company of $1,952,-000.00. A plan for reorganization was presented under which the owners of this junior debt were to be awarded $600,000.00 in new notes and a large block of common stock. Potts and Boag, respondents here, and owners of some shares of first preferred, objected to confirmation of the plan. They contended, on several grounds, that unless the junior debt was subordinated to the preferred stock claims, the plan allotted that indebtedness too great a share in the distribution of the bankrupt's assets.[2] When the stockholders' committee of which they were members approved the plan, Potts and Boag resigned and announced the formation of a new committee to press their objections to the junior debt allowance. Notwithstanding these objections, the Securities & Exchange Commission recommended the plan's acceptance, 8 S. E. C. 777, and the District Court confirmed it. 50 F. Supp. 114. Potts and Boag appealed from the District Court's decree confirming the plan. Although appealing as individuals, their appeal was based almost entirely on objections to allowances for the junior indebtedness which left less for distribution among all the preferred stockholders. Their appeal sought no separate individual relief for them-

---

[2] This $1,952,000.00 junior indebtedness consisted of subordinated notes of the Higbee Company which had been bought by Midamerica Corporation for $100,000.00 at an auction sale in 1935. Potts and Boag consistently maintained that the junior debt's participation in Higbee's assets should be limited to $100,000.00. They charged that Bradley was a director of Higbee and of Midamerica, and thus occupied two conflicting fiduciary positions. They insisted that the court should find this junior debt to be "invalid and unenforceable in whole or in part" and "subordinated to the First and Second Preferred Stock."

selves; they appealed only to have the confirmation set aside. Had their appeal succeeded, the District Court would have been required to reduce the value of junior claims asserted by Bradley and Murphy, thereby increasing the value of the claims of the preferred stockholders as a class.

In this situation, Potts and Boag sold their stock and their appeal[3] to Bradley and Murphy, claimants under the junior debt; the consideration paid was $115,000.00. The par value of this stock was $26,000.00. Its admitted market value at the time, as the court below found, was $17,000.00. Pursuant to this contract for sale of the appeal a stipulation for dismissal was filed in the Circuit Court of Appeals. Petitioner Young, a preferred stockholder of the same class, sought to intervene and prosecute the appeal. His petition was denied and the case was dismissed without opinion. Young then, on behalf of himself and all other preferred stockholders, filed a petition in the District Court setting up these facts and praying that

---

[3] Potts' testimony as to the sale was:

"Q. So that in a sense you were selling something more than your stock, I take it? A. I think so.

"Q. You were selling the appeal which you had taken in behalf of yourself and Mr. Boag; that is a fair statement, isn't it? A. I think so."

The written contract between Potts and Boag and Bradley and Murphy specifically provided for sale of the appeal as well as the stock. It reads in part:

"I hereby sell, assign, transfer and set over unto Charles L. Bradley and John P. Murphy, and their assigns, 260 shares of First Preferred stock of The Higbee Company, of Cleveland, Ohio, . . . together with all rights, title and interest, benefits or privileges we, or either of us, have or may have in and to or by virtue of or arising from the matter of The Higbee Company, Debtor, J. Fred Potts and William W. Boag, Appellants, vs. The Higbee Company, Appellee, and a certain appeal taken by J. Fred Potts and William W. Boag in said proceedings, which said appeal is now pending in the United States Circuit Court of Appeals for the Sixth Circuit . . ."

he be authorized to employ counsel to compel Potts and Boag to account to the debtor for the difference between what they received and the fair value of their stock, or praying in the alternative that Potts and Boag be required to pay over that amount to the preferred stockholders.[4] After a hearing, a special master found as a fact that Potts and Boag had appealed in behalf of themselves only and had not acted as representatives of a class. The District Court approved this finding, thought it determinative of the case, and dismissed Young's petition. The Circuit Court of Appeals affirmed. 142 F. 2d 1004. Because considerations of substantial importance to the effective administration of corporate reorganizations are involved, we granted certiorari, 323 U. S. 689.[5]

*First.* It is argued that since the Circuit Court of Appeals dismissed the appeal of Potts and Boag over Young's attempt to intervene, Young is estopped from prosecuting the present petition. This contention has no merit, for the reason, among others, that the determinative issues

---

[4] In both courts below Young sought an order against Bradley and Murphy as well as Potts and Boag but Bradley and Murphy have not been made respondents in this Court.

[5] The petitioner has made the following statement to this Court with reference to the respondent Boag:

"During the course of the appeal in the Circuit Court of Appeals it first came to Petitioner's attention that Respondent Boag had entered the Armed Services. No one representing Boag has appeared to request a stay of proceedings pending his return. However, Petitioner has no desire to cause judgment to be entered against Boag under these circumstances. It would be entirely satisfactory to have the proceedings stayed as to Boag pending his return, although no rights against him are waived."

Under these circumstances no judgment against Boag will be entered in this case and the proceedings in the Circuit Court of Appeals will be stayed as to him. Soldiers' & Sailors' Civil Relief Act of 1940, 54 Stat. 1178.

in the two proceedings were not the same. The first petition did not pray for an accounting by Potts and Boag. The court only decided then that Young could not intervene and continue that appeal, and that the appeal should be dismissed. Now, accepting the court's dismissal of the appeal as final, Young seeks an accounting for the consideration paid Potts and Boag for agreeing to dismiss.

*Second.* It is argued that since Potts and Boag did not expressly specify that they appealed in the interest of the whole class of preferred stockholders, but appealed only in their own names, they owed no duty to any stockholders but themselves. The appeal here, however, was not from a denial of any individual claim of Potts and Boag. Its basis was that every other preferred stockholder, as well as themselves, would be injured by confirmation. So far as the issues raised by the appeal are concerned, the rights of Potts and Boag and the other preferred stockholders were inseparable. Thus, even though their objection to confirmation contained no formal class suit allegations, the success or failure of the appeal was bound to have a substantial effect on the interests of all other preferred stockholders. The liability of one who assumes a determining position over the rights of others must turn on something more substantial than mere formal allegations in a complaint.[6] Equity looks to the substance and not merely to the form.

Furthermore, the right of appeal granted by a statute should not be interpreted in such way as to defeat rights clearly granted in other parts of the same Act. *Peck* v. *Jenness,* 7 How. 612, 623. Potts and Boag appealed un-

---

[6] *Sprague* v. *Ticonic Bank,* 307 U. S. 161. See *Atlas Bank* v. *Nahant Bank,* 23 Pick. (Mass.) 480; *Whitten* v. *Dabney,* 171 Cal. 621, 154 P. 312; *Honesdale Co.* v. *Montgomery,* 56 W. Va. 397, 49 S. E. 434; *Rawnsley* v. *Trenton Mutual Life Ins. Co.,* 9 N. J. Eq. 95; *Wood* v. *Dummer,* 30 Fed. Cas. 435, No. 17,944.

der § 206 of the Chandler Act, which, contrary to the general bankruptcy procedure, grants any stockholder or creditor the right to be heard on all matters relating to corporate reorganizations. Courts have liberally construed this language as authorizing appeals.[7] We are now asked to say that the privilege of appeal granted to Potts and Boag by the Act vested them with an indefeasible right to sell the privilege to the disadvantage of all other stockholders in their class. But, historically one of the prime purposes of the bankruptcy law has been to bring about a ratable distribution among creditors of a bankrupt's assets; to protect the creditors from one another.[8] And the corporate reorganization statutes look to a ratable distribution of assets among classes of stockholders as well as creditors. There would be no ratable distribution of this bankrupt estate if Potts and Boag could utilize their statutory right of appeal to get for their preferred stock $7.00 for every $1.00 paid to other preferred stockholders. We are asked to say that Congress intended such a consequence, and to construe the right of a stockholder to be heard on a plan of reorganization as carrying with it the right to "sell" the very appeal which the Act grants him.

Potts and Boag, by appealing from a judgment which affected a whole class of stockholders, owed an obligation to them, the full extent of which we need not now delineate. Certainly, at the very least they owed them an obligation to act in good faith. If Potts and Boag had declined to accept this plan in bad faith, the court, under

---

[7] *In re Keystone Realty Holding Co.*, 117 F. 2d 1003; *Dana* v. *S. E. C.*, 125 F. 2d 542; cf. *Amick* v. *Mortgage Security Corp.*, 30 F. 2d 359.

[8] *Boese* v. *King*, 108 U. S. 379, 385–386; *Sampsell* v. *Imperial Paper Corp.*, 313 U. S. 215, 219; cf. *Case* v. *Los Angeles Lumber Co.*, 308 U. S. 106. See also 66 Pa. L. Rev. 224; Senate Document No. 65, 72nd Cong., 1st Sess., 6, 10, 49–93.

§ 203,[9] could have denied them the right to vote on the plan at all. The history of this provision makes clear that it was intended to apply to those stockholders whose selfish purpose was to obstruct a fair and feasible reorganization in the hope that someone would pay them more than the ratable equivalent of their proportionate part of the bankrupt assets.[10] If Potts' and Boag's opposition to confirmation sprang from such a purpose (and Potts and Boag did obstruct confirmation until they were able to "sell"

---

[9] "Sec. 203. If the acceptance or failure to accept a plan by the holder of any claim or stock is not in good faith, in the light of or irrespective of the time of acquisition thereof, the judge may, after hearing upon notice, direct that such claim or stock be disqualified for the purpose of determining the requisite majority for the acceptance of a plan." 52 Stat. 894.

[10] A year before the House Committee on the Judiciary held its extensive hearings on the Chandler Act, a Circuit Court of Appeals held that a creditor could not be denied the privilege of voting on a reorganization plan under § 77B, although he bought the votes for the purpose of preventing confirmation unless certain demands of his should be met. *Texas Hotel Corp.* v. *Waco Development Co.*, 87 F. 2d 395. The hearings make clear the purpose of the Committee to pass legislation which would bar creditors from a vote who were prompted by such a purpose. To this end they adopted the "good faith" provisions of § 203. Its purpose was to prevent creditors from participating who "by the use of obstructive tactics and hold-up techniques exact for themselves undue advantages from the other stockholders who are cooperating." Bad faith was to be attributed to claimants who opposed a plan for a time until they were "bought off"; those who "refused to vote in favor of a plan unless . . . given some particular preferential advantage." Hearings on Revision of the Bankruptcy Act before the Committee on the Judiciary of the House of Representatives, 75th Cong., 1st Sess., on H. R. 6439, Serial 9, pp. 180–182.

See also, on the same general topic, McLaughlin, Capacity of Plaintiff-Stockholder to Terminate a Stockholder's Suit, 46 Yale L. J. 421; Hornstein, Problems of Procedure in Stockholder's Derivative Suits, 42 Col. L. Rev. 574, Rodgers and Groom, Reorganization of Railroad Corporations under Section 77 of the Bankruptcy Act, 33 Col. L. Rev. 571, 588–601.

their appeal) they were acting in bad faith within the statutory meaning of that term. And accepting money as the end result of such a statutory violation cannot vest them with a right to keep it. Payment to them of this money simply meant that the distribution of bankrupt assets to the junior debt claimants, who paid Potts and Boag, would represent a smaller net value. The statute contemplates, and the appeal was taken on the assumption, that the less the junior claimants were awarded the more all the preferred stockholders would receive. Therefore, the consideration of the sale which Potts and Boag made was not merely their own interest in the bankrupt estate, but the interest of all the preferred stockholders. The situation which enabled them to traffic in the interests of others was created by a statute passed to protect the interests of all of them.[11] The statute neither compels them to appeal nor to prosecute an appeal already taken contrary to their own interests; it does impose upon them the duty of good faith to all other stockholders whose interests they temporarily control because they are necessarily involved in the appeal. This control of the common rights of all the preferred stockholders imposed on Potts and Boag a duty fairly to represent those common rights.[12] This representative responsibility is emphasized

---

[11] See *Federal Communications Comm'n* v. *Sanders Radio Station,* 309 U. S. 470, 476-7; *Interstate Commerce Comm'n* v. *Oregon-Washington R. Co.,* 288 U. S. 14, 25-7.

[12] By virtue of their standing as sole appellants, Potts and Boag, during the pendency of the appeal, dominated the fate of the reorganization as completely as though they had been the majority stockholders of a going corporation. Cf. *Southern Pacific Co.* v. *Bogert,* 250 U. S. 483, 492: "But the doctrine by which the holders of a majority of the stock of a corporation who dominate its affairs are held to act as trustees for the minority, does not rest upon such technical distinctions. It is the fact of control of the common property held and exercised, not the particular means by which or manner in which the control is exercised, that creates the fiduciary obligation. ... The essential of the liability to account sought to be enforced

by the fact that they might have been awarded compensation for their services had they succeeded in reducing the claim of the junior indebtedness to the advantage of all the preferred stockholders. § 243; cf. § 249. *In re Keystone Realty Holding Co.*, 117 F. 2d 1003, 1006. They cannot avail themselves of the statutory privilege of litigating for the interest of a class and then shake off their self-assumed responsibilities to others by a simple announcement that henceforth they will trade in the rights of others for their own aggrandizement. To hold that the Chandler Act permits this, would be to say that Congress, which sought more effectively to accomplish fair and equitable treatment of investors, had, by granting a right of appeal to stockholders, defeated its purpose, and had substantially modified the whole body of law imposing the most rigorous responsibilities for fair dealing upon those who represent the rights of others.[18]

The money Potts and Boag received in excess of their own interest as stockholders was not paid for anything they owned. It came to them in settlement of litigation which if carried to a successful conclusion would have added to the value of other preferred stockholders of the common debtor. That the suit was settled and dismissed does not alter the rights of parties as to distribution of the fruits of the settlement. A distinction as to rights arising from litigation, which rests upon the difference between a judgment and a settlement of a lawsuit, under these circumstances, as in others, is "too formal to be sound." *Lyeth* v. *Hoey*, 305 U. S. 188, 195, 196; *Helvering* v. *Safe*

---

in this suit lies not in fraud or mismanagement, but in the fact that, having become a fiduciary through taking control of the old Houston Company, the Southern Pacific has secured fruits which it has not shared with the minority. The wrong lay not in acquiring the stock, but in refusing to make a pro rata distribution on equal terms among the old Houston Company shareholders.

[18] Cf. *Woods* v. *City Bank*, 312 U. S. 262, 267–269; *Meinhard* v. *Salmon*, 249 N. Y. 458, 164 N. E. 545.

*Deposit & Trust Co.,* 316 U. S. 56, 63–67. The appeal of Potts and Boag was alleged to be for the benefit of all preferred stockholders. In the contemplation of the statute which authorized the appeal, its fruit properly belongs to all the preferred stockholders. One creditor, therefore, cannot make that fruit his own by a simple appropriation of it. Cf. *Terry* v. *Little,* 101 U. S. 216, 218.

*Third.* It is argued that even though the money paid in excess of the stock value does in equity and good conscience belong to the stockholders, the bankruptcy court is without power to award the relief prayed. Courts of bankruptcy are courts of equity and exercise all equitable powers unless prohibited by the Bankruptcy Act. *Securities & Exchange Comm'n* v. *United States Realty Co.,* 310 U. S. 434, 455. The District Court still has jurisdiction to exercise its powers under the Act both because of its express reservation and because of the provisions of § 222.[14] That power is ample to authorize the court to order an accounting for the funds in dispute here. *Pepper* v. *Litton,* 308 U. S. 295, 303–310; *American United Ins. Co.* v. *Avon Park,* 311 U. S. 138, 145–147; *Consolidated Rock Co.* v. *DuBois,* 312 U. S. 510, 521–523.

Nor can we sustain the contention that relief should be denied on the allegations that Young's motive in bringing the proceeding is an unworthy one. His petition sought relief for the benefit of all the stockholders. The rights of these stockholders are not to be ignored because of some motive attributable to Young.

*Reversed.*

The CHIEF JUSTICE and MR. JUSTICE JACKSON concur in the result.

MR. JUSTICE ROBERTS dissents.

---

[14] This Section gives the judge power, under conditions applicable here, to alter and modify a reorganization plan even after confirmation.