74

## MAGIDA on Behalf of VULCAN DETIN-NING CO. v. CONTINENTAL CAN CO., Inc. et al.

United States District Court
S. D. New York.

Nov. 8, 1951.

During the course of extended pre-trial examinations, defendant Continental Can Company, Inc. (hereafter Defendant) propounded certain questions to plaintiff and plaintiff's lawyer which they characterized as privileged or repetitious or irrelevant and refused to answer. Defendant now moves to compel answers. Defendant has entered separate motions on each examination, but they raise identical problems.

Plaintiff, as a stockholder of Vulcan Detinning Company, brings this action under Section 16(b) of the Securities Exchange Act of 1934, Title 15 U.S.C.A. § 78p (b) to recover profits realized by defendant on so-called "short-swing" transactions in Vulcan's stock.

Defendant's answer concedes the purchase and sale of stock on which the action is based but sets up three affirmative defenses: that the sale was in the best interest of Vulcan and with approval of Vulcan's stockholders; that the challenged transaction was, in fact, exempted under the Securities Exchange Act; and that plaintiff was not a stockholder at the time of the transaction, hence is estopped from prosecuting this action, pursuant to Rule 23(b), Federal Rules of Civil Procedure, 28 U.S.C.A. Defendant hints darkly that plaintiff is only a "tool" or "dummy" for his lawyers and suggests that there may be some sort of illicit agreement among them which would bar plaintiff in this equity suit.

Defendant divides the unanswered questions roughly into three groups: (1) Questions which will bring out plaintiff's knowledge of facts and circumstances surrounding defendant's sale of Vulcan's stock. (2) Questions which will bring out the entire conversation between plaintiff and his attorneys, at least some part of which conversation plaintiff has already disclosed. (3) Questions which will bring out the terms of the retainer agreement between plaintiff and his attorneys.

Plaintiff claims that any conversations with his lawyers and the terms of the retainer agreement are privileged. All other questions, he asserts, are either repetitious of earlier questions which he has answered or irrelevant and immaterial. At

Morris J. Levy, New York City, for plaintiff.

Willkie, Owen, Farr, Gallagher & Walton, New York City (Mark F. Hughes, New York City, of counsel), for defendant, Continental Can Company, Inc.

IRVING R. KAUFMAN, District Judge.

any rate, they are all improper, he says. Defendant urges their complete propriety.

■ The motions call for a hard appraisal of the privilege of confidential communication between attorney and client. As much as any privilege, it has been buffeted around our courts in recent years. There is nothing sacrosanct about it. It is a product of legislation, without Constitutional guarantee, and it is far from inviolate. Basically, it is an expression of policy, sacrificing full disclosure for the considered advantage of untrammeled attorney-client relations. It is not a boundless right, and its limits constantly shift. "The recognition of a privilege does not mean that it is without conditions or exceptions", Justice Cardozo once said. "The social policy that will prevail in many situations may run afoul in others of a different social policy, competing for supremacy. It is then the function of a court to mediate between them, assigning so far as possible, a proper value to each." [1]

Plaintiff's claim to limitless privilege is as extreme under the circumstances as defendant's intimation that practically no communications between attorney and client are privileged. Somewhere between the two, marked by guideposts set up in our courts, the privilege exists.

These communications are not privileged, defendant says: Communications where plaintiff has waived his privilege, not necessarily expressly, but implicitly through certain acts; communications establishing the terms of retainer agreements between attorney and client; and communications from attorney to client concerning matters alleged in the complaint.

■ Section 353, New York Civil Practice Act, creates the privilege. "An attorney or counselor at law shall not be allowed to disclose a communication, made by his client to him, or his advice given thereon, in the course of his professsional employment * * *". The wording of the statute indicates that the privilege is much sturdier support for client-attorney confidences than for attorney-client confidences. The cases reinforce this. See

People ex rel. Vogelstein v. Warden of New York County, 150 Misc. 714, 270 N.Y.S. 362, affirmed 242 App.Div. 611, 271 N.Y.S. 1059, and Justice Shientag's excellent discussion of the privilege generally. It is apparent that the statute primarily offers protection to confidences reposed in his attorney by the client. The words "or his advice given thereon" indicates a legislative intent to extend a kind of privileged reciprocity to the attorney, protecting those acts of his which follow directly on his client's confidences. But matters communicated to the client by his attorney, information out of the client's own knowledge, transmitted to him by his attorney and having a direct bearing on the suit in issue, are entitled to much less favored treatment.

Asserting the tremulous state of the attorney-to-client privilege, defendant argues that many of the questions seek to elicit exactly that information which is not privileged. Matters which go to the complaint, which have been gathered exclusively by the attorney and then communicated to the client are without privilege, defendant claims. The argument has much merit. In effect, defendant would replace the older concept of unlimited attorney-client privilege with the streamlined notion of adequate pre-trial discovery in the proper case. In the New York courts, where the system of pre-trial discovery has not yet officially reached the expansive state of Federal practice, the idea has been cited with particular approval.

The discovery techniques, outlined by the Supreme Court in Hickman v. Taylor, 1947, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, have been set up as a model to be followed wherever practicable. "The plaintiff may not be excused from furnishing required information on the theory that the facts are known only to its attorneys and that such information in their possession is privileged." Mutual Life Insurance Co. of N.Y. v. Tailored Woman, 276 App.Div. 144, 93 N.Y.S.2d 241, 243. The abuse inherent in an over-extension of the privilege to information given the client by his attorney is apparent. The attorney could elicit the information from third persons, subject

1. Clark v. United States, 1933, 289 U.S. 1, 13, 53 S.Ct. 465, 77 L.Ed. 993.

to discovery, then communicate it to his client as "advice" and thereby render it privileged. This is a subversion of the whole modern trend toward appropriate pre-trial discovery. If this fact is recognized in New York State where Hickman v. Taylor is merely law by adoption, how much more convincing is it in the Federal Courts where Hickman v. Taylor is law?

■ The privileged status of attorney-to-client communications has been dibilitated by the inroads of liberal discovery doctrines. The scope of the privilege contracts as the need for discovery grows. But defendant's position here correspondingly loses effect. We may theorize thus: Granted that the matter may not be privileged, is it not necessary for defendant at least to show good cause in accordance with the rationale of Hickman v. Taylor before we allow discovery? Probably so. But on many of the questions in issue, defendant has shown no proper cause. These questions require plaintiff to indicate what facts of defendant's stock transactions, plaintiff's attorney communicated to him. Defendant has conceded all facts concerning the actual purchase and sale of stock in April 1950 and September 1950, as alleged in plaintiff's complaint. These facts are not in issue here. Defendant's answer raises issues of law and issues of fact, but none of these concerns purchase and sale or the amounts involved. Defendant can discover nothing new by this line of questioning. As to these questions, plaintiff's objections are sustained. The same holds for analogous questions asked plaintiff's attorney.

■ But even assuming the privileged state of some of these communications, defendant argues, plaintiff has waived his privilege and now has no standing to object. To this extent he is correct: Where there has been a waiver of privilege, clearly expressed, the deponent cannot object to questions concerning the privileged matter. The waiver need not be expressed in writing nor in any particular form, but the intent to waive must be expressed either by word or act or omission to speak and act. In re Associated Gas and Electric Co., D.C.S.D.N.Y. 1944, 59 F. Supp. 743. A waiver may be effectuated by a disclosure of confidential information. Once the confidential matter has been disclosed, it is no longer a secret and the privilege which might be claimed under the statute disappears. In re Associated Gas and Electric Co., supra. Defendant asserts that plaintiff effectively waived his privilege as to all conversations with his attorney because he volunteered certain portions of those conversations. I disagree. I see no intent to reveal the whole breadth of discussions in plaintiff's admitting, as he did, in a general way, that certain conversations took place. I do believe that plaintiff waived his privilege as to those immediate exchanges with counsel and I have so indicated by allowing those questions which concern themselves with those conversations. (#1 and #20 of plaintiff's examination.) Beyond that I will not breach the privilege.

Defendant further argues that there is no privilege as to terms of a retainer between attorney and client. He asks the Court to sustain those questions concerning the agreement.

The authorities are substantially uniform against allowing any privilege as to the fact of retainer or identity of the client. U. S. v. Pape, 2 Cir., 1944, 144 F.2d 778. There is a sensible reason for this. "The retention of counsel was to call the privilege into operation. The privilege itself was to extend only to communications between a client and an attorney who had been retained. The name or identity of the client was not the confidence which the privilege was designed to protect". People ex rel. Vogelstein, supra. [150 Misc. 714, 270 N.Y.S. 367.]

■ I think it significant that these cases talk in terms of the "fact" of retention and not the "facts". I agree that the existence of a retainer is outside the privilege. I am unwilling to extend the principle to the actual terms of that retainer. The problem in the case at bar would appear to be somewhat complicated by the fact that plaintiff's lawyer did volunteer some facts concerning the retainer during his examination. This, says defendant, constitutes waiver and plaintiff can no longer assert his privilege. I do not agree.

The attorney-client privilege is personal to the client. The attorney cannot waive it, only the client can. People ex rel. Vogelstein, supra. The plaintiff did not waive. The only possible instance where the act of an attorney in revealing privileged matter could be considered waiver on the part of the client is that situation where the client was present while the disclosure was being made, yet offered no objection. Steen v. First National Bank of Sarcoxie Mo., 8 Cir., 1924, 298 F. 36. Here, plaintiff was not present at the examination of his attorney. There was no waiver. The questions concerning terms of the retainer are improper.

Plaintiff objected to certain questions as repetitious of earlier questions which he had answered. The objection would appear captious and unnecessarily disputatious since plaintiff could have nothing to conceal if he had already answered the question. A simple response at the time would have avoided the complication of bringing them before the court now. However, I have read the record and agree that certain questions are repeated. I think it probably better to sustain the objections at this time rather than unnecessarily to prolong the examinations.

Certain other questions plaintiff objected to as irrelevant and immaterial and refused to answer. Defendant readily admits that most of these questions are designed to bring out an irregular if not distinctly illegal motive in bringing this suit. Plaintiff contends that motive is no proper consideration in stockholders' suits of this nature and cites the strong language of Young v. Higbee, 1945, 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890, where it is said that the court will not look to the individual plaintiff's motive if the relief sought is for the benefit of all stockholders. Defendant distinguishes that case as a "representative" action on behalf of a stockholder class rather than a "derivative" suit as here. Defendant cites the Opinion of Judge Rifkind in Stella v. Kaiser, D.C.S.D. N.Y. 1949, 87 F.Supp. 525, as support for allowing an examination into plaintiff's motive.

Neither case is directly in point. The propriety of an examination into motive in a Section 16(b) case has not been specifically settled in any reported case. But an analysis of the legislative history of the Securities Exchange Act, clearly shows that motive should be no concern of the trial court. The avowed purpose of the statute was to condemn *any* "short-swing" transaction. Liability was based on an objective measure of proof: The existence of a "short-swing" purchase, sale and profit. The deterrent or prophylactic character of the statute is apparent; Congress intended to halt the flagrant abuses of insider trading. The method chosen was one of outright prohibition. Any purchase, sale and profit occurring within six months, as defined by Section 16(b), is an automatic violation, without more. Smolowe v. Delendo, 2 Cir., 1943, 136 F.2d 231, 148 A.L.R. 300, certiorari denied 320 U.S. 751, 64 S.Ct. 56, 88 L. Ed. 446; Gratz v. Claughton, 2 Cir., 1951, 187 F.2d 46. See also Hearings before Committee on Banking and Currency on § 84, 72d Cong., 2d Sess., and § 56 and § 97, 73d Cong., 1st and 2d Sess., 1934. Hearings before Committee on Interstate and Foreign Commerce on H.R. 7852 and H.R. 8720, 73d Cong., 2d Sess., 1934. If the statute is directed primarily at prohibiting "short-swing" transactions—and I think there is no doubt of this—then the motive of the plaintiff in a suit of this nature is without materiality. Objections to the questions seeking to elicit facts of plaintiff's motive will be sustained.

Of the questions propounded to plaintiff Magida, numbers 1, 2, 5, 6, 7, 8, 11, 20, are proper and the objections are overruled. Plaintiff may exercise his privilege on numbers 12, 13, and 21, and the objections are sustained. Objections to numbers 10, 14, 15, 22, 23, 24, 25, 26, 27 and 28 as irrelevant will be sustained. Numbers 3, 4, 16 and 17 are repetitious and objections will be sustained.

Of the questions propounded to plaintiff's lawyer Markowitz numbers 30 and 31 are proper and objections are overruled. Numbers 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15,

16, 22, 23, 24, 25, 26, 27, 32 and 33 are privileged and plaintiff's objections will be sustained. Numbers 18, 19, 20 and 21 are meaningless if not connected to matter that is clearly privileged and are undoubtedly forerunners of privileged questions. Objections to them will be sustained. Objections to numbers 17, 29, 34, 35, 36, 37, 38 and 39 as irrelevant will also be sustained. Numbers 13 and 28 are objectionable because they are not sufficiently specific; as now framed they cover matters both privileged and unprivileged.

Settle order.