UNITED STATES of America, for the Use and Benefit of Milton B. KIRBY, Trustee of and for Tiles, Incorporated, Bankrupt, Plaintiff,

v.

SOUTHERN CONSTRUCTORS, INC., and The Travelers Indemnity Company, Defendants.

No. 1888.

United States District Court
W. D. Missouri, S. D.

Dec. 11, 1962.

Lincoln, Haseltine, Keet, Forehand & Springer, Springfield, Mo., for plaintiff.

F. Philip Kirwan, Kansas City, Mo., for defendants.

JOHN W. OLIVER, District Judge.

This case pends on defendants' motion for summary judgment. There is no genuine issue as to any of the following material facts: Tiles, Incorporated, was a subcontractor of Southern Constructors, Inc. in connection with a construction job at Table Rock Dam; Travelers Indemnity Company executed the usual bonds required by the Miller Act; diffi-

culties arose in connection with the execution of the subcontract; Southern's letter of July 7, 1961 shows that it allegedly had been paying portions of Tiles' labor and materials in order that the completion dates specified in its prime contract be met; a dispute arose between Southern and Tiles as to the amount of the accounts between them; on October 20, 1961, Southern wrote Tiles a letter which stated: "The enclosed cashier's check in the amount of $3,827.00 is for payment of your account in full for subcontract work at Table Rock Dam as per following detail"; [1] by this time, plaintiff Milton B. Kirby had been appointed trustee for Tiles in a Chapter X bankruptcy proceeding pending in this Court; plaintiff admits that as trustee for Tiles, he received Southern's letter of October 20, 1961 and its check in the amount of $3,827.00, that he cashed the check, that the proceeds were deposited in his account as trustee for Tiles, Inc. but that on October 26, 1961, he wrote (Southern) a letter which stated: "We have your letter of October 20th enclosing a cashier's check for $3,827.00 and this is to advise you that you had been given credit for all back charges invoiced to you prior to the time of our first billing. Therefore, we must insist that you pay us the additional sum of $1,370.86. Your failure to do so will make it necessary for us to maintain an action against the bonding company for payment".[2]

It was in this factual setting that the plaintiff trustee filed his complaint. Defendants' motion for summary judgment is based on the proposition that the acceptance of the check for $3,827.00 as payment "in full" constituted "an accord and satisfaction" and that, as such "it is a complete defense to this action".[3]

---

1. The details of the accounting which arrived at the $3,827.00 figure are unimportant for the purpose of ruling the pending motion.

2. The breakdown of figures referred to in footnote 1 detailed one item for Backcharge Invoices which totaled $1,370.86. The discrepancy between this figure and the amount prayed for in plaintiff's com-

plaint, $1,375.63 is noted but is ruled also to be unimportant.

3. Defendants rely on 1 Am.Jur.2d Accord and Satisfaction § 18; § 1279 of Corbin on Contracts (1 vol. ed.); Lightfoot and Son v. Edward Hurd and Co. (1905), 113 Mo.App. 612, 88 S.W. 128; H. C. Pollman and Brothers Coal and Sprinkling Co. v. St. Louis (1898), 145

---

**539**

Plaintiff does not seriously contest the principle of law applicable to an accord and satisfaction that is relied upon by defendants; plaintiff urges that "under the facts of the present action this rule of law, if true, can have no application". Plaintiff contends that he, as a trustee in bankruptcy, was "unlike other persons", and that he had "no authority of and in his own behalf to enter into compromises which would be binding upon the bankrupt or his creditors unless same has been approved by the Court".[4] In practical effect, plaintiff contends that he can have his cake and eat it too, because he does not suggest that the $3,827.00 check, received by him pursuant to defendants' allegedly ineffective effort to compromise, be returned to its rightful owner.

In Shubert v. Rosenberger, 8th Cir., 1913, 204 F. 934, 45 L.R.A.,N.S., 1062, the plaintiff wrote the defendant a letter stating that if "you pay me *now*" he would accept $4,600 as payment in full. Plaintiff also made clear that his accord was "based on immediate cash" terms. The defendant, however, sent a check for only $2,500 and stated that he would send "the balance very shortly". Plaintiff cashed the $2,500 check, kept the money, and sued for the full value of the disputed claim, crediting, however, the $2,500 against the total amount claimed to be due.

The defense of accord and satisfaction failed in that case because the defendant had refused to accept the accord proposed by the plaintiff in accordance with the express terms proposed by plaintiff.

In that case, on its facts, the plaintiff was agreeable to being paid a lesser amount only if paid with complete promptness, and only if paid in cash. In that case, the defendant wanted to eat his cake by paying the lesser amount but he also wanted to keep his cake by paying later. It obviously could not be held that a valid agreement to compromise was ever made by the parties in the cited case.

Under those circumstances, Judge Hook held that "to maintain his action the plaintiff was not required to tender defendants the money they paid". But significantly for this case, involving as it does plaintiff's effort to repudiate a consummated accord and satisfaction allegedly invalid only because of plaintiff's failure to obtain court approval of the compromise when it was proposed by defendants, it was held that had the plaintiff in that case "been trying to escape" his agreement to compromise established by an accord and satisfaction, "a return of what he received might have been necessary".[5]

Is the duty of a trustee in bankruptcy any less? We think not. Our general reference of this case to the Referee did not oust us of jurisdiction to exercise the power and jurisdiction vested and conferred by the Bankruptcy Act. Paragraph 22.05 of Collier on Bankruptcy, 14th Ed. Vol. 2, pages 408–9, correctly states that "the terms of * * * General Order 12(1) * * * do not oust the judge of jurisdiction, and he may hear matters in the first instance that otherwise would go before the ref-

Mo. 651, 47 S.W. 563; and St. Joseph School Board v. Hull (1897), 72 Mo.App. 403. Except for the fact that plaintiff is a trustee in bankruptcy, there would be no question but that defendants' position would be well taken as a matter of Missouri law.

4. For the steps necessary and required to be taken by the Bankruptcy Act and General Orders in connection with the approval of compromises in bankruptcy, see In re Kansas City Journal-Post Co.; Schapiro v. Bostian, 8th Cir., 1944, 144 F.2d 816, 817.

5. The gloss of the decision is that Judge Hook, had the question been directly presented for decision, would have held that a return of what plaintiff had received would have been required both in fact and in law. This is clear from the court's direct holding that "it was plaintiff's right to regard (the proposed accord and satisfaction) as having been repudiated by defendants, and to credit their payment", rather than return it, when plaintiff sued for the full amount allegedly due.

eree, although such an action is ordinarily taken only under unusual circumstances."[6] And we think our power and jurisdiction over our appointed trustees in regard to their conduct of litigation on behalf of their bankrupts is never exhaustively transferred by a general order of reference to our referee.

We think that this case involves sufficiently unusual circumstances to require the exercise of our equitable power and jurisdiction over a trustee in bankruptcy appointed in our court. There is no doubt about the existence of our general equitable power. As stated in Young v. Higbee Co., 324 U.S. 204, 214, 65 S.Ct. 594, 89 L.Ed. 890 (1945), "Courts of bankruptcy are courts of equity and exercise all equitable powers unless prohibited by the Bankruptcy Act". We know of no prohibition in the Act against what we shall require of our trustee in this case.

If a maxim need be cited to rationalize our order we would select the language of the one that says "Equity prevents mischief". The mischief here is that seemingly the trustee did not recognize that defendants were proposing to compromise their liability by way of a customary accord and satisfaction until it was to his continued advantage to make that recognition. The trustee seeks not only to keep the money tendered by defendants but he also seeks the declaration of this Court that his failure to present the proposed compromise for approval in accordance with the clear requirements of the Bankruptcy Act is to be the basis of denying defendants' motion for summary judgment. We do not think the trustee can have it both ways.[7]

Plaintiff, of course, as trustee, should be permitted to determine which way he would like to proceed. If he decides that he wants to continue to prosecute his cause of action against defendants in this case, he shall, within ten (10) days of the date of this memorandum and order, refund to defendants the sum of $3,827.00 received by him under the terms proposed in defendants' letter of October 20, 1961. Such action will constitute a rejection of defendants' proposed compromise and, after the refund has been made, the parties will then again be at arms length and free to litigate their respective claims. Should plaintiff elect to follow this alternative, defendants' motions for summary judgment will be overruled and the case will be set for trial on the next trial docket.

If plaintiff, on the other hand elects to retain the $3,827.00, then he shall, within ten (10) days of the date of this memorandum and order, dismiss this action against defendants with prejudice. The trustee shall thereafter apply for appropriate order from the referee which will seek a belated approval of the compromise and which will serve to adequately notify the creditors that such a compromise was in fact made and that it has now been approved by the referee, if the referee, in the exercise of his discretion, does in fact approve the compromise.

It is so ordered.

---

6. The submission of an offer to compromise to the judge for approval rather than the referee has been held to be within the exceptional situation. See Matter of Baxter, 6th Cir., 1920, 269 F. 344, cert. den. 256 U.S. 694, 41 S.Ct. 535, 65 L.Ed. 1175. While power to approve exists in the judge, we believe that in the ordinary situation, such as was here presented, we would have made a special reference of the matter to our referee had the trustee sought our approval rather than the referee's.

We do not, for the moment, intimate any personal wrongdoing on the trustee's part. He acted, as he now acts, in his official capacity and is under duty to raise all legal questions as best he can.