In re LLOYD McKEE MOTORS, INC., a New Mexico corporation, Federal ID No. 85–0130433,

and

Pride Dodge, Inc., a New Mexico corporation, Federal ID No. 85–0350006,

and

ZMHC, Inc., a New Mexico corporation, Federal ID No. 85–0340928, Debtors.

Bankruptcy No. 11–91–12894 MA.

United States Bankruptcy Court, D. New Mexico.

July 22, 1993.

William T. Caniglia, Albuquerque, NM, for debtors.

Leonard K. Martinez–Metzgar, Office of the U.S. Trustee, Albuquerque, NM.

Jay D. Hertz, for Chrysler Credit Corp., Gail Gottlieb, Jonathan B. Sutin, Albuquerque, NM, for Chrysler Corp.

Douglas G. Schneebeck, Albuquerque, NM, for Chrysler Realty Corp.

Allan L. Wainwright, Albuquerque, NM, for Ken Zangara and Zangara Dodge.

James A. Askew, Albuquerque, NM, for Chrysler Ins. Co. & Chrysler Life Ins. Co.

## MEMORANDUM OPINION

MARK B. McFEELEY, Chief Judge.

This matter came before the Court upon the Debtors' Motion to Disqualify the Ballots of Chrysler Corporation, Chrysler Credit Corporation, Chrysler Realty Corporation, and Ken Zangara and Zangara's Dodge. Having considered the facts, the memoranda of law, the applicable law, the argument of counsel and otherwise being fully informed and advised, the Court finds that the motion is not well taken and will be denied.

## FACTS

In 1991, Lloyd McKee Motors, Inc. and Pride Dodge, Inc., along with their holding company, ZMHC, Inc., ("the Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code. Disclosure Statements were filed by each Debtor on March 8, 1993, and were approved by this Court on March 18, 1993. This Court set May 3, 1993, as the last day for filing written acceptances or rejections of the Plans proposed by each debtor.

Funding for the plans is entirely dependant upon litigation against four of the Class 3 unsecured creditors in each case ("the Creditors"). The Creditors voted to reject the plans in all three cases. The Creditors and their claims are as follows: Chrysler Corporation filed a claim in the amount of $374,883.70 against Lloyd McKee Motors, Inc.; Chrysler Credit Corporation filed a claim of $1,686,642.12 against all three Debtors; Chrysler Realty Corporation filed a claim of $145,628.33 against all three Debtors; and Ken Zangara and Zangara's Dodge filed a claim of $199,026.73 against all three Debtors. The Creditors are defendants in litigation commenced by one or more of the Debtors in these cases. Because of the rejection of the plans by the Creditors, the plans fail to meet the requirements of 11 U.S.C. § 1126(c).[1]

Each Debtor filed a motion to disqualify the Creditors' ballots rejecting the plan of reorganization. The Debtors claim the Creditors' votes were not cast in good faith because of pending litigation against the Creditors which, if successful, will be the sole source of funding of the plans, because of the Creditors' motions to convert the cases to Chapter 7, and because one of the Creditors owes money to one of the Debtors under § 542 of the Bankruptcy Code. The Debtors therefore argue that, by reason of 11 U.S.C. §§ 1126(c) and (e), the Creditors' votes should not be considered in the tally of the ballots cast.

## DISCUSSION

This matter came before the Court to determine whether pending litigation by the Debtors against the Creditors and motions by the Creditors to convert the cases to Chapter 7 constitute sufficient grounds to find that the votes of the Creditors against the Debtors' Chapter 11 plans were not cast in good faith and whether the fact that a Creditor owes money to a debtor under § 542 is sufficient grounds to find the vote of the creditor was not cast in good faith.

Section 1126(e) states: On request of a party in interest, and after notice and a hearing, the court may designate any entity whose acceptance or rejection of such plan was not in good faith, or was not solicited or procured in good faith or in accordance with the provisions of this title. 11 U.S.C. § 1126(e). Votes which are not cast in good faith are not to be counted. 11 U.S.C. § 1126(c). Congress intentionally left good faith undefined. 5 Collier on Bankruptcy paragraph 1126.05[1] (1988).

The United States Supreme Court set the standard for good faith in *Young v. Higbee Co.*, 324 U.S. 204, 210–211, 65 S.Ct. 594, 598, 89 L.Ed. 890 (1945) under the predecessor of § 1126(e),[2] stating that the purpose of the good faith provision was to prevent creditors from using "obstructive

---

1. Section 1126(c) requires that the plan be accepted by holders of at least two-thirds in amount and more than one-half in number of the allowed claims of the class.

2. Section 203 of Chapter X of the Bankruptcy Act, 11 U.S.C. § 603.

tactics and holdup techniques" to secure either some unfair advantage through the plan's acceptance or rejection, or perhaps preferential treatment for the price of their vote. The history of § 1126(e) "makes clear that it was intended to apply to those stockholders/[creditors] whose selfish purpose was to obstruct a fair and feasible reorganization in the hope that someone would pay them more than the ratable equivalent of their proportionate part of the bankrupt assets." *Id.* (footnote omitted). There are no facts before the Court that would allow the Court to find that the Creditors cast their negative votes with any intention or expectation that someone else purchase their interests at a price that would give the Creditors an unfair advantage over other creditors or to obstruct a feasible plan.

■ In a good faith inquiry, there is a broader rule of disqualification. The inquiry is "whether a vote was cast for the ulterior purpose of securing some advantage to which the creditor would not otherwise have been entitled." *In re Marin Town Center,* 142 B.R. 374, 378–379, (N.D.Cal.1992); *In re A.D.W., Inc.,* 90 B.R. 645, 649 (Bankr.D.N.J.1988); *In re The MacLeod Co., Inc.,* 63 B.R. 654, 655 (Bankr.S.D.Ohio 1986). A creditor may not cast his vote for an ulterior purpose and expect to have it counted. *In re Federal Support Co.,* 859 F.2d 17, 19 (4th Cir.1988). Ulterior or coercive motives that have been held to constitute bad faith include "pure malice, 'strikes', blackmail, and the purpose to destroy an enterprise in order to advance the interests of a competing business." *Id.* (citing *In re Pine Hill Collieries, Co.,* 46 F.Supp. 669, 671 (E.D.Pa.1942)). It is the Debtors' contention that the current and pending litigation gave the Creditors an ulterior motive of frustrating the litigation. This contention is entirely speculative, but even if true, does not appear to be grounds to find a lack of good faith.

■ The Creditors are not obligated to provide an explanation for their rejection of the plans. The Creditors must have thought that disapproval of the plans of reorganization coincided with their own self-interests. "One's self-interest, however, does not provide an ulterior motive." *In re Federal Support Co.* at 20. The Creditors were entitled to cast their votes in accordance with their perception of their own self-interests and nothing suggests that they were motivated by any other interest or purpose. Without any further evidence, the pendency of the lawsuits are not enough to support an inference of a lack of good faith. *Id.; In re Mikulec Industries, Inc.,* 1992 WL 170685 (W.D.N.Y.); *In re A.D.W., Inc.,* 90 B.R. 645 (Bankr.D.N.J.1988); *In re Landau Boat Co.,* 8 B.R. 432 (Bankr.W.D.Mo.1981). The fact that the pending lawsuits are the estates' sole assets does not change this analysis. *See In re Federal Support Co.,* 859 F.2d 17, 19 (4th Cir.1988); *In re Mikulec Industries, Inc.,* 1992 WL 170685 (W.D.N.Y.).

Debtors' counsel also asserts that motions by the Creditors to convert the cases to Chapter 7 are sufficient grounds to designate the votes as not cast in good faith. The Creditors' motions are permitted by 11 U.S.C. § 1112(b). Nothing suggests, and Debtors' counsel fails to support with case law, the argument that motions to convert the cases to Chapter 7 made by the Creditors are grounds to disqualify their votes against the plans.

The combination of the pending lawsuits and motions to convert the cases to Chapter 7 are not a sufficient basis upon which to disqualify the Creditors' votes against the plans. This combination of factors does not support an inference of ulterior motive or securing some advantage to which the Creditors would not otherwise have been entitled.

■ The Debtors' final contention is that Chrysler Credit Corporation's ("Chrysler Credit") claim should be disallowed because of an order by this Court that Chrysler Credit pay $86,941.80 in post petition rent, received from Chrysler Realty Corporation ("Chrysler Realty"), to the estate of one of the Debtors, ZMHC, Inc. ("ZMHC"), under § 542 of the Bankruptcy Code. The Debtors' memorandum supporting the motions

to disqualify the Creditors ballots is dated June 7, 1993. The order by this Court requiring the payment was issued June 21, 1993, and payment is not due for 30 days. It is unclear how an order regarding money owed by one of the creditors, but not yet due could be construed to deem the Creditor's vote as not cast in good faith. Further, the order was appealed by ZMHC on July 1, 1993. Should the creditor not make the payment, however, the question remains whether the existence of money owed by a creditor to a debtor under 11 U.S.C. § 542(b) is sufficient grounds to designate the vote of the creditor as not cast in good faith.

Chrysler Credit must pay the money it owes to ZMHC by the Court ordered deadline or the Court shall disallow its claim under § 502(d) of the Bankruptcy Code.[3] In the present situation, Chrysler Credit did not owe the money to ZMHC at the time it rejected the plans, therefore, there is no basis for denying Chrysler Credit's vote rejecting the plan. If money were owed at the time of the acceptance or rejection of the plan, there would be no basis for disallowing the claim under § 1126(e), rather the claim would be disallowed under § 502(d).

### CONCLUSION

An evaluation of the limited facts of this case presented to the Court at this hearing under the foregoing standards indicates that the Creditors' votes were not inspired by a prohibited ulterior purpose. There is no support for a finding that the combined factors of pending litigation by the Debtors against the Creditors and motions by the Creditors to convert the cases to Chapter 7 are sufficient grounds to designate the votes of the Creditors as not cast in good faith. Nor would the existence of money owed under § 542 be a sufficient basis to deem the votes of the Creditors as not cast in good faith, although the vote might be disallowed on other grounds.

**3.** This section provides, in part, that the court shall disallow any claim of any entity from which property is recoverable under § 542 un-

This memorandum opinion constitutes the Court's findings of fact and conclusions of law.

less the entity has paid the amount for which it is liable under § 542 of this title.