In re the MacLEOD COMPANY, INC., Debtor.

Bankruptcy No. 1–84–02435.

United States Bankruptcy Court, S.D. Ohio, W.D.

Aug. 12, 1986.

Richard L. Bell, Cincinnati, Ohio, for debtor.

DECISION AND ORDER ON § 1126(e)

BURTON PERLMAN, Bankruptcy Judge.

This Chapter 11 case had proceeded to the point where a plan was presented to creditors for a vote pursuant to 11 U.S.C. § 1126. The unsecured creditors whose claims total in excess of $1,500,000.00 have, both as to number and amount, voted to accept the plan. Class II creditors in number voted to accept the plan, but acceptances were insufficient as to amount in this class. Debtor thereupon brought on the present motion, asking that we, pursuant to 11 U.S.C. § 1126(e), designate the following entities as ones whose rejection of the plan was not in good faith: William Bates, Charles Harper, James Koetting, Carlene Moorhead and Athel Thomas, Jr. The issue presented by the motion is whether the rejection of the plan by these individuals was in good faith, for if it was not, their ballots may be disregarded. The motion came on for hearing.

Debtor has filed a certificate of service showing that the named individuals were duly notified of the hearing. In addition, subsequent to the filing of the motion, this court received a communication signed by James Koetting which comments upon the moving papers filed by debtor. Thus, though there were no appearances at the hearing by the above-mentioned individuals, we are satisfied that they received notice of the hearing.

At the hearing, debtor established that Harper was a contract administrator for debtor for some 10 to 12 years. Bates was a plant superintendent for six or seven

years for debtor. Koetting worked in debtor's accounting department and became its accountant-controller. While with debtor, Koetting did some government sales work. Messrs. Harper, Bates and Koetting signed the Articles of Incorporation of an entity named Tri-Mac Manufacturing and Services Company and these were filed with the Office of the Secretary of the State of Ohio on March 8, 1982. At that time, these three individuals were still employed by debtor. There was evidence at the hearing that Koetting and Bates are now engaged in the Tri-Mac enterprise and Moorhead also works there. The evidence established that Tri-Mac is a competitor of debtor.

The record should also reflect that this court has received letters pertaining to this case from the named individuals. We have received communications from no other creditor in this case. All of the letters are negative in tone with respect to debtor, and at least some of them appear to have for their purpose an effort to persuade the court not to permit this debtor to continue in existence. They misconstrue the role of the court in the Chapter 11 process, but that is not the present point. By contrast to the unsecured creditors whose claims exceed $1,600,000.00, the claims of most of the named individuals is less than $2,000.00. Yet they have literally papered the court with communications critical of the debtor. When this is coupled with the fact that all of them are or were associated with a competitor of the debtor (a competitor which they brought into existence during the time that they were employed by the debtor!), their good faith in casting their ballots with regard to confirmation of the plan becomes a real issue.

The relevant statute, § 1126(e), provides:

On request of a party in interest, and after notice and a hearing, the court may designate any entity whose acceptance or rejection of such plan was not in good faith, or was not solicited or procured in good faith or in accordance with the provisions of this title.

This statutory provision is illuminated by the following:

"Good faith", however, in both statute and Rule was left undefined with the idea that the content of the phrase would be developed and construed in accordance with the cases as they arose. The test seemed to be whether those parties in interest with respect to whom a motion of disqualification is made, had some ulterior reason for their action which looked to some special advantage to be gained thereby. 5 Collier on Bankruptcy (15th ed.) p. 1126–16.

Thus, in a relevant case, the Supreme Court said that the "end which is condemned is one that looks to some added advantage to be gained over and above that normally accruing to the position of creditor." *Young v. Higbee*, 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890 (1945). In that case, the Court found it to be bad faith where stockholders obstructed confirmation until they could sell their stock at a profit. In a case where individuals purchased creditors' interests for the purpose of securing approval of a plan, the Court said:

The mere fact that a purchase of creditors' interests is for the purpose of securing the approval or rejection of a plan does not of itself amount to "bad faith". When that purchase is in aid of an interest other than an interest as a creditor, such purchases may amount to "bad faith" under § 203 of the Bankruptcy Act, 11 U.S.C.A. § 603. *In re P–R Holding Corporation*, 147 F.2d 895, 896, 897 (2nd Cir.1945).

In *In re Pine Hill Collieries Co.*, 46 F.Supp. 669, 671 (E.D.Pa.1942), the court said:

On the other hand, pure malice, "strikes", and blackmail, and the purpose to destroy an enterprise in order to advance the interests of a competing business, all plainly constituting bad faith, are motives which may be accurately described as ulterior.

We are persuaded from a consideration of the facts in this case, applying the standards to be found in the statute and the pertinent cases, that the rejection of debt-

or's plan by the named individuals was not in good faith, but rather was for the ulterior purpose of destroying or injuring debtor in its business so that the interests of the competing business with which the named individuals were associated, could be furthered.

Accordingly, we hold that the ballots cast by the named individuals shall not be counted in deriving the tabulation of balloting on the plan.

So Ordered.