## In re PETER THOMPSON ASSOCIATES, INC., Peter A. Thompson, Debtors.

### Bankruptcy Nos. 91–12042, 91–12041.

United States Bankruptcy Court,
D. New Hampshire.

April 26, 1993.

Joseph Williams, Manchester, NH, for Peter Thompson.

James M. McNamee Jr., Sullivan & Gregg, Nashua, NH, for Fleet Bank—NH.

John M. Sullivan, Sulloway, Hollis & Soden, Concord, NH, for FDIC & New Bank of New England.

William S. Gannon, Wadleigh, Starr Offices, Manchester, NH, for Peter Thompson Assoc. Inc.

John A. Rachel, Law Office of Dan Sklar, P.C., Manchester, NH, for New Bank of New England, NH.

Geraldine Karonis, Asst. U.S. Trustee, Manchester, NH.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

These jointly administered corporate and individual chapter 11 proceedings came on for confirmation hearings on April 12, 1993 on the debtors' second amended plans of reorganization as well as the objections thereto by the Federal Deposit Insurance Corporation ("FDIC"). Also before the Court were several interrelated in limine type motions, viz: i) debtors' motion to disqualify the FDIC from voting on plan and the objection thereto; ii) the FDIC's motion for a protective order with regard to various discovery requests made by the debtors' relating to the FDIC's objections to confirmation; iii) the FDIC's motion in limine to exclude the introduction of any evidence of settlement discussions referred to in the debtors' motion to disqualify the FDIC from voting on their plans; and iv) the debtors' motion to strike the FDIC's objections to their plans or, in the alternative, for an in limine order of its own. The following comprises the Court's findings and conclusions in accordance with Fed. R.Bankr.P. 7052.[1]

## BACKGROUND

This case was filed in 1991 and under an order entered in the fall of that year, the debtor has been paying adequate protection payments to the FDIC in excess of $27,000 per month while the parties have been trying to negotiate a consensual plan of reorganization. Aside from the normal problems with a reorganization, the debtor in this case counts as one of its assets a lender-liability or damage action against the bank that the FDIC took over as an asset which it indicated it intended to pursue. The second amended plans of reorganization before the Court do not resolve that possible lawsuit against the FDIC. Obviously then, these are not consensual plans.

The motion by the debtors to disqualify the FDIC from voting on their plans and for in limine relief are bottomed upon the contention that the FDIC did not act in good faith in its conduct during this case and therefore under 11 U.S.C. § 1126(e), this Court has the power to disqualify the FDIC's vote. To state it positively, the

---

**1.** This memorandum of decision sets forth in detail the reasoning supporting the Court's bench rulings made at the outset of the April 12, 1993 confirmation hearings.

debtor contends the FDIC's actions in this case have been in bad faith.

## DISCUSSION

The debtor has pointed to a number of things that it contends constitute bad faith actions by the FDIC. But it is my view and conclusion that all of the things pointed to by the debtor are actions which necessarily involve the gambit of confirmation issues normally dealt with at a confirmation hearing. There is no allegation of a discrete ulterior motive by the FDIC that, standing alone, could be seen as the kind of egregious conduct that points to bad faith conduct. Rather, the record simply reflects the usual bargaining and jockeying for position in the pre-confirmation stages of a chapter 11 reorganization.

■ *In re MacLeod Co.,* 63 B.R. 654, 655 (Bankr.S.D.Ohio, W.D.1986) succinctly lists the kind of situations which support a finding of bad faith and therefore justify a section 1126(e) designation. These include pure malice, "strikes," blackmail, and the purposeful destruction of a debtor's business. *MacLeod* at 655. In *MacLeod,* the debtor made a 1126(e) motion to designate the vote of an objecting creditor as having been cast in bad faith because of an alleged tie-in with a competing business. The court found that tie-in provided the kind of ulterior motive to support its ruling designating the creditor's vote. *MacLeod,* 63 B.R. at 655–56. Specifically, the court stated that "the rejection of the debtor's plan by the named individuals was not in good faith, but rather was for the ulterior purpose of destroying or injuring debtor in its business so that the interests of the competing business with which the named individual were associated, could be furthered." *Id.* at 656.

Some time ago *In re Featherworks Corp.,* 36 B.R. 460, 463 (E.D.N.Y.1984), recognized that the "concepts of good faith and self-dealing are not mutually exclusive." *Id.* at 462. In other words, a creditor is entitled to engage in self-dealing in trying to get the best deal it can for itself out of the reorganization process. But what it is not entitled to do is engage in the

kind of egregious conduct identified by *MacLeod* that by itself demonstrates some ulterior motive or purpose apart from the normal self-dealing.

■ I believe that the only way to resolve this kind of conflict is to look for some kind of "smoking gun" conduct or fact that the debtor can point to *that in and of itself* raises the question of bad faith without getting into argumentation as to whether the plan is confirmable or not. Here the debtor has pointed to a letter back in October of 1991 in which the FDIC stated the amounts of its secured and unsecured claims that it would be asserting and that it would be making the 1111(b)(2) election only in the personal case. That is in fact exactly what the FDIC has done in its further conduct and in its objection to the plan. To contend, as the debtor does, that it really is trying to get out of its 1111(b)(2) election by opposing the plan is not in my judgment the kind of discrete egregious action with ulterior motive that is demonstrated by the conduct itself. Absent an independent "smoking gun" situation the debtors' contention of bad faith in this context would require a complete evaluation of the FDIC's other objections to confirmation and whether the FDIC does or does not have other reasons to oppose the plan even though it were assumed the FDIC is now unhappy with its 1111(b)(2) election.

Judge Koger's decision in *In re Gilbert,* 104 B.R. 206 (Bankr.W.D.Mo.1989), defines the concept of good faith under the statute:

> Good faith voting does not require nor can it expect, a creditor to act with selfless disinterest.... The test then, consonant with the United States Supreme Court's standard, is whether a creditor has case his vote with an "ulterior purpose" aimed at gaining some advantage to which he would not otherwise be entitled in his position.... Ulterior or coercive motives that have been held to be constitute bad faith include "pure malice, 'strikes', blackmail, and the purpose to destroy an enterprise in order to advance the interest of a competing business."

*Gilbert,* 104 B.R. at 216 (citations omitted).

If the Court does not have this kind of test, the confirmation hearings in my judg-

ment can deteriorate into "trying the victim" rather than the defendant, as an analogy to a strategy used in some criminal proceedings. Here, a too easy resort to § 1126(e) can result in having the focus taken away from the matter more properly before the Court. The moving parties-in-interest are debtors in reorganization that have plans before the Court. It is their burden to come forward and show the requisite facts for confirmation. On this showing, I do not detect any ulterior purpose or egregious conduct on the part of the FDIC that would justify the drastic remedy of denying their vote or removing their standing to vote. *See In re A.D.W. Inc.*, 90 B.R. 645 (Bankr.D.N.J.1988).

For the same reasons, there also is no basis here to depart from the general policy of the law to exclude settlement discussions from evidence at a trial on the merits, under either Rule 408 of the Federal Rules of Evidence, or New Hampshire case law that recognizes a fraud or similar type exception. Here there is simply a dispute that appears to be bona fide (to the extent the Court is required to inquire into it in the absence of that "smoking gun" fact) and particularly here where the objecting creditor is still a prospective defendant in some litigation.

It is quite understandable that someone who is going to be sued after confirmation of the plan may not be too thrilled with the plan. For example, in *A.D.W., Inc., supra,* which is fairly close to this case, the objecting creditor was involved as a defendant in state court litigation that the debtor had brought prior to the bankruptcy and it was argued that the creditor was opposing the plan simply to kill the state court lawsuit against it. The Court did not find that fact, in and of itself, to be a disqualifying bad faith factor. *A.D.W.* at 651.

With regard to the interrogatories and the motions relating thereto, I note that the interrogatories were served on March 10, 1993 and the answers were returned on April 9, 1993. The FDIC filed a motion for a protective order on April 6, 1993. The situation is that after two years of being in this Court, the debtor has just recently seen fit to file interrogatories on a time schedule that prevented the Court from considering either a motion to compel by the debtor or a motion in limine or for a protective order by the FDIC to be heard before the call of this two-day confirmation hearing.

Obviously the debtor could have done that much earlier in the course of this case. To the extent that those answers were important to the presentation of its own case it could have sought an appropriate enforcement order. Even if the answers are improperly vague or boilerplate, I will not address those contentions now when the debtors have waited until the call of the confirmation hearing to raise them.[2] The only remedy the Court would consider would be to continue the hearing. That in my judgement, at least from what has been presented, would not be in anybody's interest. Both sides have their witnesses ready to go and this Court's calendar will not permit another two-day hearing until the sometime in the late fall.

Accordingly, by separate orders, the Court will grant the FDIC's motion for protective order and motion in limine and

---

**2.** While Fed.R.Bankr.P. 9014 provides for the use of discovery in contested matters, the nature, and especially the timing, of the debtors' discovery requests in these proceedings appear inappropriate in the context of the confirmation hearing process. The reason the Court deals with discovery in confirmation hearings the way it does is because the full use of discovery at the confirmation hearing can in effect convert what is supposed to be a relatively quick hearing, in which the debtor shows its financial capability and so forth to have its plan confirmed, into a full scale civil litigation. A flurry of discovery on all possible plan issues can turn out to be a waste of time when it transpires later on that the debtor does not have the financial capability to fund a plan or perform it anyway. Accordingly, I normally proceed on the basis that the debtor will proceed with its burden of proof and its showing that the § 1129 factors for confirmation are in hand, one of which in cramdown situations is the acceptance by one unimpaired class. If the debtor does not have that acceptance, then the whole process is cut off at the knees anyway. In my judgment that is a much more efficient way of handling a confirmation hearing in most cases, subject to appropriate tailoring of useful discovery if raised early enough in the reorganization process.

deny the debtors' motion to strike objections and the motion to disqualify the FDIC from voting.