**In re HOLLY KNOLL PARTNERSHIP, Debtor.**

**Bankruptcy No. 93–15696 DWS.**

United States Bankruptcy Court, E.D. Pennsylvania.

May 18, 1994.

Michael R. Lastowski, Saul, Ewing, Remick & Saul, Philadelphia, PA, for ERM Partnership.

Edward J. DiDonato, Ciardi & DiDonato, Philadelphia, PA, for E.W. Real Estate.

Jeffrey B. Herman, Lundy, Flitter & Beldecos, P.C., Narberth, PA, for debtor.

Joseph Minni, Philadelphia, PA, U.S. Trustee.

## *OPINION*

DIANE WEISS SIGMUND, Bankruptcy Judge.

Before the Court is the Motion of ERM Partnership to Strike Ballot pursuant to 11 U.S.C. § 1126(e) and for Related Relief (the "Motion"). ERM Partnership ("ERM") is a New Jersey general partnership and a secured creditor in the chapter 11 bankruptcy case of Holly Knoll Partnership [1] ("Debtor"). In the Motion, ERM asserts several reasons why the ballot of E.W. Real Estate Management Corp. ("E.W. Real Estate"), as purchaser of the claim of the Class 2 claimant, should not be counted for the purposes of meeting the statutory requirements to confirm Debtor's Plan of Reorganization dated December 29, 1993 (the "Plan"). Since the parties agree that consideration of the E.W. Real Estate ballot is necessary for the confirmation of the Plan, further proceedings to obtain confirmation have been continued pending the Court's decision on the Motion. For the reasons stated below, the Motion is **GRANTED.**

### *BACKGROUND.*

On September 29, 1993, Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code (the "Code"). Since filing its petition, Debtor has been acting as a debtor-in-possession. Debtor's sole general partner is Holly Knoll Development Corporation, a corporation of which Edward W. Weingartner, Jr. ("Weingartner") is the only officer, director and shareholder. Debtor's sole limited partner is Weingartner, individually. On December 29, 1993, Debtor filed the Plan with E.W. Real Estate as its co-proponent.

E.W. Real Estate is in the business of constructing residential homes and built 45 homes in 1992 and 38 homes in 1993. Its

---

**1.** We note that Debtor is also known as Holly Knoll Weingartner Limited Partnership.

annual revenue is $8,000,000 to $9,000,000. E.W. Real Estate's two 50% shareholders are Weingartner's son, Edward W. Weingartner, III ("Weingartner III"), and daughter. Weingartner III and his sister acquired the stock of E.W. Real Estate from their father in 1991 for $1,000 each. Weingartner III is E.W. Real Estate's President but receives no salary from E.W. Real Estate; his sister is the Treasurer and Secretary and receives an annual salary of $50,000. Weingartner III runs the day to day operations of E.W. Real Estate. Weingartner is employed by E.W. Real Estate as an advisor/general manager and has check signing authority. Weingartner finds land and puts deals together for E.W. Real Estate and, for such services, receives an annual salary of $100,000.

The Plan divided Debtor's creditors into seven classes. Three of the classes were impaired: Class 1 (ERM's secured claim); Class 2 (tax claim of Middle Township of New Jersey ("Middle Township")); and Class 5 (claim of unsecured creditors). ERM rejected the Plan as both a Class 1 and a Class 5 claimant.[2] The Class 2 claimant voted to accept the Plan.

Representatives of Debtor and ERM attended a meeting of the Township Committee of Middle Township of New Jersey on February 15, 1994 and a second meeting on February 28, 1994 to discuss the Plan. Debtor was hoping to persuade Middle Township to accept the Plan; ERM was hoping to persuade Middle Township to reject the Plan. According to Bruce Gorman, the Township Solicitor, Middle Township knew that its failure to cast a vote with respect to the Plan was the same as rejecting the Plan. The Township Solicitor further testified that Middle Township was prepared to assign its ballot to either party who paid the full amount of taxes due and owing by Debtor, $138,512.50, by 4:00 p.m. the next day, March 1, 1994, the day the ballots were due. In other words, if the taxes were paid, the purchaser of the certificates would "win". If the taxes were not paid, ERM would "win" because the Township would not vote. Exhibit ERM–19.[3] The oral resolution was adopted by a majority vote and, according to the Township Solicitor, has the "effect" of an action by the governing body of Middle Township. Gorman testified that the oral resolution adopted by Middle Township made reference to Weingartner individually and placed the onus on Weingartner to pay the taxes. Gorman explained that the Township knew corporate entities were involved but referred to them as Weingartner, for the Debtor, and as the Robertsons, for ERM, to avoid confusion. Gorman testified that he thought Weingartner was representing "whoever the debtor was".

The following day, Weingartner paid the taxes to Middle Township and Middle Township executed an Assignment Agreement assigning "all of its right, title and interest to all tax liens, claims and security which it may have against any of the properties currently owned by Holly Knoll Partnership" as well as

**2.** ERM claims to control Classes 1 and 5. ERM is the only claimant in Class 1 and its vote, therefore, controls Class 1. It is undecided at this point whether ERM controls Class 5 of the Plan, the class of unsecured creditors. The amount of ERM's claim against the Debtor and certain other issues are addressed in Adversary Proceeding No. 93–0855. After a protracted trial, that matter is under advisement with the Court. E.W. Real Estate's counsel acknowledged at the hearing that without E.W. Real Estate's Class 2 affirmative vote, the Plan could not be confirmed. Presumably then, Class 5 has rejected the Plan without regard to ERM's disputed Class 5 claim.

**3.** The oral resolution adopted by Middle Township on February 28, 1994 and subsequently memorialized in minutes of that session stated as follows:

"[I]n the event that either of you appears at the office of the Tax Collector, of the Township of Middle, prior to 4:00 p.m. tomorrow and pays over the full amount of taxes owed, plus the accrued interest, we will assign our ballot to that party and you may vote it as you see fit, in the event that no one does so by 4:00 p.m. tomorrow the Township Committee declines to take action because of the numerous questions and numerous uncertainties of the situation. In essence what that means is the onus is on Mr. Weingartner to come in, on the other hand if he gets here and does it then you folks are out of luck and you better think about it. So, what we're telling you is we want our money and we want it tomorrow and whoever gives it to us wins and if nobody does then I guess Mr. Lastowski you win. That is the position of the Township and we need a vote."
Exhibit ERM–19.

384

its rights under the Plan, including its right to vote, to Weingartner, or his nominee. Exhibit ERM–22. Middle Township did not make any other assignment of the Class 2 claim. The Township Solicitor testified that he and counsel to Debtor had a conversation on March 1, 1994 regarding the legal impact of an assignment made to *Weingartner* when another entity, *E.W. Real Estate*, was actually paying the taxes. Gorman stated that under New Jersey law only a mortgage holder or the owner of property could pay real estate taxes and the reference of Mr. Weingartner's name was for "simplicity sake" but was intended to refer to the actual debtor entity, Holly Knoll Partnership.

Weingartner III testified that his father called him after the February 28, 1994 Township meeting and informed him that there was an opportunity for E.W. Real Estate to purchase the Middle Township tax certificates. E.W. Real Estate provided the funds to pay the taxes, and Weingartner III signed the assigned ballot on behalf of E.W. Real Estate voting to accept the Plan. Weingartner testified that Debtor did not have the funds to purchase the tax certificates and that it was impractical for Debtor to try to borrow the necessary funds because the taxes had to be paid the next day. The record is silent as to whether Weingartner had the funds to buy the tax certificates. Weingartner III testified that it was his decision, not his father's, to purchase the Middle Township tax certificates. Weingartner III based his decision on three considerations: (1) as the co-proponent of the Plan, purchasing the tax certificates would "help our causes"; (2) the tax certificates were a good investment whether or not the Plan was confirmed; and (3) if the Plan goes forward, E.W. Real Estate will get management and construction fees. As of the Effective Date of the Plan, as that term is defined in the Plan, E.W. Real Estate would become the new general partner of Debtor and would receive a 10% interest in Debtor and also management and construction fees for constructing new homes on Debtor's property, a parcel of real estate in Middle Township.

In the Motion, ERM argues that Weingartner purchased the Class 2 claim for the purpose of creating an impaired accepting noninsider class and that E.W. Real Estate's vote in favor of the Plan was not in good faith. Consequently, the Class 2 ballot should be stricken under § 1126(e). In addition, ERM asks this Court to deem Weingartner or his nominee's purchase of the Class 2 claim to be an equity contribution to Debtor and determine that Class 2 is not impaired. Finally, ERM asks us to determine that for the purposes of Plan voting, the Class 2 claim is an insider claim within the meaning of § 1129(a)(10). Consequently, there would be no impaired class voting to accept the Plan.

A hearing was held on the Motion on March 15, 1994. Because counsel to E.W. Real Estate claimed not to have received sufficient notice of the Motion in so far as it raised the § 1126(e) bad faith issue, we left the record open so that E.W. Real Estate could supplement the record on that issue if needed. ERM chose not to do so. ERM and E.W. Real Estate filed briefs on April 25, 1994 and this motion was then ripe for decision.

## DISCUSSION.

The Code provisions controlling resolution of this matter are §§ 1129(a)(10) and 1126(e). Section 1129(a)(10) provides as follows:

(a) The court shall confirm a plan only if all of the following requirements are met:

(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

The purpose of § 1129(a)(10) is to "prevent a debtor from using an insider-dominated class to satisfy the requirement that at least one impaired class of creditors vote in favor of the plan". *In re Applegate Property, Ltd.*, 133 B.R. 827, 833 (Bankr.W.D.Texas 1991). The motivation behind the vote of an insider is not the same as that of a regular creditor.

Section 1126(e) provides as follows:

(e) On request of a party in interest, and after notice and a hearing, the court may designate any entity whose accep-

tance or rejection of such plan was not in good faith, or was not solicited or procured in good faith or in accordance with the provisions of this title.

■ Section 1126(e) and its predecessors, § 203 of the Bankruptcy Act and Chapter X Rule 10–305, were intended to prevent creditors and stockholders, "by use of obstructive tactics or of hold-up techniques, from exacting for themselves advantages through acceptance or rejection of a plan, or to secure some preferential treatment such as management of the company for the price of their vote". 5 Collier on Bankruptcy, ¶ 1126.05[1] at 1126–19 (15th ed. 1993).[4] "Good faith" was not defined under § 203 or Rule 305; rather its definition was left to be developed by case law. According to case law, the definition of good faith appears to be "whether those parties in interest with respect to whom a motion for disqualification is made, had some ulterior reason for their action which looked to some special advantage to be gained thereby". *Id.* (citing *American Mutual Life Insurance Company v. City of Avon Park*, 311 U.S. 138, 61 S.Ct. 157, 85 L.Ed. 91 (1940)). Section 1126(e) incorporates pre-Code law. 5 Collier on Bankruptcy, ¶ 1126.05[2] at 1126–19.

■ Good faith voting and solicitation does not demand "selfless disinterest". *Applegate*, 133 B.R. at 834 (citing *In re Federal Support Co.*, 859 F.2d 17, 19 (4th Cir.1988)). *See also In re A.D.W. Incorporated*, 90 B.R. 645, 649 (Bankr.D.N.J.1988). Courts have generally held that if a purchaser of claims in voting the assigned claims is pursuing an interest in addition to its interest as a creditor, bad faith may be found. The court in *In re Allegheny International, Inc.*, 118 B.R. 282, 289, amended on technical grounds, on reconsideration (Bankr.W.D.Pa.1990) observed that:

"[t]he mere fact that a purchase of creditors' interests is for ... securing the approval or rejection of a plan does not of itself amount to 'bad faith'. When that

4. *See also Young v. Highbee Co.*, 324 U.S. 204, 210–11, 65 S.Ct. 594, 597–98, 89 L.Ed. 890 (1945) (The purpose of imposing a good faith

purchase is in aid of an interest other than an interest as a creditor, such purchases may amount to 'bad faith' under section 203 of the Bankruptcy Act."

*Id.* (quoting *In re P–R Holding Corp.*, 147 F.2d 895, 897 (2d Cir.1945). *See also In re Gilbert*, 104 B.R. 206 (Bankr.W.D.Mo.1989); *In re MacLeod Co., Inc.*, 63 B.R. 654 (Bankr. S.D.Ohio 1986). Finally, § 1126(e) grants a bankruptcy court discretion limited to designating a vote as one filed in bad faith or not. Section 1126(e) does not give this Court the discretion to impose other remedies. *Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 97 (3d Cir.1988).

## I.

In the matter before the Court, if E.W. Real Estate's Class 2 vote does not count as a matter of law by virtue of § 1129(a)(10), because it is the vote of an insider, we need not reach ERM's argument that the Class 2 vote should be disqualified under § 1126(e) as one not made in good faith. We therefore begin our discussion by considering whether E.W. Real Estate's Class 2 vote should be counted for the purposes of § 1129(a)(10) or should be disregarded as the vote of an insider.

As a general rule, "an entity which acquires a claim steps into the shoes of that claimant, enjoying both the benefits and the limitations of the claim, as a successor in interest". *Applegate*, 133 B.R. at 833. However, that general rule should not apply where, as in *Applegate*, it would undermine the policy of § 1129(a)(10) to prevent a debtor from using an insider-dominated class to satisfy the requirement that at least one impaired class of creditors vote in favor of the plan. *See In re Heights Ban Corp.*, 89 B.R. 795, 799 (Bankr.S.D.Iowa 1988). The motivation behind the vote of an insider is the same regardless of how the insider got the claim.

requirement on the voting process was to prevent the use of "obstructive tactics and hold up tech-

With these general principals in mind, we look to §§ 101(31)(C) and (E)[5] and § 101(2) to decide whether E.W. Real Estate is an insider. In the instant matter, E.W. Real Estate is not a general partner in Debtor (§ 101(31)(C)(i)); a relative of a general partner[6] in, general partner of, of person in control of Debtor (§ 101(31)(C)(ii)); a partnership in which Debtor is a general partner (§ 101(31)(C)(iii)); or a general partner of Debtor (§ 101(31)(C)(iv)); nor is there a basis to conclude that E.W. Real Estate is a person in control of Debtor (§§ 101(31)(C)(v)). Weingartner testified that E.W. Real Estate does not control, manage or make decisions for Debtor. Debtor, which presently has no offices, receives its mail at E.W. Real Estate's offices in Pennsylvania but Weingartner stated that Debtor does not conduct business at E.W. Real Estate's offices. While E.W. Real Estate has funded an escrow account to pay Debtor's bankruptcy counsel, we believe that fact points to the control Debtor/Weingartner has over E.W. Real Estate rather than the alternative. Finally, E.W. Real Estate is not an affiliate of Debtor within the meaning of §§ 101(31)(E) since its relationship to Debtor does not come within the parameters of § 101(2).[7] E.W. Real Estate, therefore, does not precisely fit any of the Code's definitions of an "insider".

■ Our consideration of whether E.W. Real Estate is an insider, however, does not stop here because Congress' use of the word "includes" in § 101(31) evidences its "expansive view of the insider class, suggesting that the statutory definition is not limiting and must be applied on a case by case basis". *Applegate*, 133 B.R. at 832 (quoting *In re Missionary Baptist Foundation of America, Inc.*, 712 F.2d 206, 210 (5th Cir.1983); discussing § 101(25), the predecessor to § 101(31)). *See also In re Heights Ban*, 89 B.R. at 799 ("Persons not specifically defined but of similar type also can be 'insiders' ").

Sections 1129(a)(10) and 1126(e) were discussed in detail in *Applegate*, a case factually similar to the instant matter. In *Applegate*, the debtor was a Texas limited partnership. Daseke Consulting, Inc. ("Daseke"), a sister corporation of the debtor's general partners, obtained assignments of 57.82% of the claims of unsecured creditors in the debtor's chapter 11 bankruptcy case. *Id.* at 828. Daseke voted the assigned claims in favor of the debtor's plan and against a competing plan. The court disqualified Daseke's votes rejecting the competing plan under § 1126(e) but denied as moot the request to disqualify the votes accepting debtor's plan because, the court concluded, the votes, being insider votes, do not count as a matter of law by virtue of § 1129(a)(10). *Id.* at 836. In *Applegate*, even though Daseke did not fit squarely into the parameters of §§ 101(31) and (2), the court found Daseke to be an insider explaining that the use of the word "includes" in § 101(30), another predecessor to § 101(31), "justifies resort to the rule of *ejusdem generis* to encompass other arrangements consistent with the intended scope of the statute".[8] 133 B.R. at 832. In *Apple-*

---

niques" to procure an unfair advantage over other creditors in the confirmation process).

5. Sections 101(31)(C) and (E) of the Code provide as follows:

(31) "insider" includes—
(C) if the debtor is a partnership—
(i) general partner in the debtor;
(ii) relative of a general partner in, general partner of, or person in control of the debtor;
(iii) partnership in which the debtor is a general partner;
(iv) general partner of the debtor; or
(v) person in control of the debtor.
(E) affiliate, or insider of an affiliate as if such affiliate were the debtor;

6. While Weingartner III and his sister are relatives of a general partner, EW Real Estate does not, as ERM acknowledges, fit neatly into this category either.

7. We conclude this based on our interpretation of § 101(2) although we note that Debtor appears to acknowledge otherwise in its Plan of Reorganization. Plan, Article I, ¶¶ 1.34 and 1.4.

8. Black's Law Dictionary (6th ed. 1990) defines *ejusdem generis* as follows:

Of the same kind, class, or nature. In the construction of laws, wills, and other instruments, the "ejusdem generis" rule is, that where general words follow an enumeration of persons or things, by particular and specific meaning, such general words are not be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. (citation omitted) The rule, however, does not necessarily require that the general provision be limited in its scope to the

*gate,* debtor, Daseke and other related entities were all components of a single business enterprise and a contribution from each of the entities was required for the enterprise to function. Moreover, debtor's principal was also an officer of Daseke and each of the other related entities. *Id.* at 832–33. The ties between Debtor and E.W. Real Estate are comparable to those between the debtor and Daseke in *Applegate,* and we therefore conclude that E.W. Real Estate is an insider within the meaning of the Code.

 In the instant matter, Debtor's general partner is Holly Knoll Development Corporation, a corporation whose sole officer and shareholder is Weingartner. Debtor's only limited partner is Weingartner individually. For all intents and purposes, any and all decisions made with respect to Debtor are made by Weingartner who exercises complete control over Debtor.

With respect to E.W. Real Estate, we begin by noting its initial appearance in this Chapter 11 case in connection with its Motion to Intervene in Adversary Proceeding No. 93–0855 wherein the Debtor is, *inter alia,* contesting ERM's secured claim. In its Motion, E.W. Real Estate averred that "E.W. is owned by Edward W. Weingartner, Jr." and in this Court's bench opinion rendered on January 10, 1994, it was so found. This finding was determinative of this Court's final order that intervention was not warranted where Weingartner was participating in the proceeding on behalf of the Debtor and, therefore, able to adequately protect the interests of E.W. Real Estate which were the same as those of the Debtor. That Weingartner, not his children, owns E.W. Real Estate was previously determined based on E.W. Real Estate's own Court submissions.

E.W. Real Estate now contends it is owned by Weingartner's son and daughter who purchased their interests for a nominal fee from Weingartner. Weingartner is an "employee" of E.W. Real Estate drawing an annual salary of $100,000.[9] Even though Weingartner III and Weingartner tried to characterize Weingartner as nothing more than an advisor to E.W. Real Estate, Weingartner has check signing authority, a significant power, on E.W. Real Estate's checking account and appears to have been the individual to implement the claim purchase on behalf of E.W. Real Estate.[10] Weingartner III testified that E.W. Real Estate is funding an escrow account which has, or will, pay some or all of Debtor's legal fees.[11]

It may be that Weingartner III and his sister technically own E.W. Real Estate. However, Weingartner's activities suggest that he, not they, is the architect of E.W. Real Estate's involvement in this case. It strains credibility to believe that when Weingartner called his son after the February 28, 1994 Middle Township meeting and "informed" his son of the opportunity to purchase the tax certificates, that Weingartner exerted no influence over Weingartner III's decision to buy the certificates. We believe that Weingartner's earlier characterization of himself as "owner" of E.W. Real Estate, at a time when that status did not legally impede his objectives, more accurately reflects his status and role in this entity. His attempt to

identical things specifically named. Nor does it apply when the context manifests a contrary intention....

9. Weingartner is fifty-seven or fifty-eight years old and has been involved in the construction business for about forty years. By contrast Weingartner's son is twenty-six and has been in the business for ten or eleven years, which includes the four years that he was at college. As a result of his forty years in the business, Weingartner has a network of business contacts, and he provides E.W. Real Estate with the benefit of those contacts. Weingartner has no source of employment income outside of E.W. Real Estate.

10. Weingartner III acknowledged that Weingartner secured the funds drawn on EW Real Estate's bank account. He also made the payment

to the Township. ERM–20. While Weingartner III signed the ballot, he had no knowledge of how it was obtained or filled out. The Township delivered the ballot to Weingartner. Weingartner III was also unsure of whether Mr. Lundy (Debtor's counsel) was at one time a director of E.W. Real Estate although he acknowledged that Mr. Lundy's firm was counsel until the recent employment of Ciardi & DiDonato in Debtor's bankruptcy case. Weingartner's daughter, the other 50% shareholder, officer and director, did not appear to have been consulted on any of these matters.

11. We note that Weingartner testified that he personally is paying Debtor's legal fees.

back away from that position now must be viewed with utmost skepticism. We find that even though E.W. Real Estate does not fit squarely within the parameters of §§ 101(31) and (2), E.W. Real Estate is nonetheless an "insider" consistent with the intended scope of these sections of the Code.

Moreover, even though ERM seems to assume that the Class 2 claim was purchased by E.W. Real Estate and the Class 2 ballot was assigned to E.W. Real Estate, we are not so sure. According to the Assignment Agreement executed by Middle Township, Exhibit ERM–22, the Class 2 claim was assigned to *Weingartner*. By two letters dated March 4, 1994, counsel to E.W. Real Estate requested that the tax certificates be assigned to E.W. Real Estate. Exhibits ERM–25 and ERM–26. By return letter dated March 8, 1994, Gorman informed E.W. Real Estate that the tax certificates had already been assigned to Weingartner and that Middle Township would need written instructions from Weingartner before it could execute another assignment of the certificates. Exhibit ERM–27. There is no indication in the record that Weingartner provided Middle Township with such written instructions or designated E.W. Real Estate as its nominee. Consequently, the right to vote the Class 2 claim appears to belong to Weingartner, not E.W. Real Estate. If E.W. Real Estate is not the Class 2 claimant, it was not entitled to vote on the Plan in the first place. Weingartner is a "person in control" of Debtor and, under § 101(31)(C)(v), is an insider of Debtor. It would appear that the assignment to E.W. Real Estate was structured to avoid the application of § 101(31)(C)(v) and consequential infirmity of the ballot.

Class 2 started out as a non-insider impaired class. E.W. Real Estate's or Weingartner's purchase of the Class 2 claim converted Class 2 into an insider impaired class whose vote may not be counted as a matter of law by virtue of § 1129(a)(10). Debtor has acknowledged that if the Court so rules it will be unable to satisfy the condition for confirmation as required by § 1129(a)(10) of the Code that an impaired class, not counting the vote of an insider, must vote to accept the Plan.

## II.

Since we have found that the Class 2 vote does not count as a matter of law by virtue of § 1129(a)(10), disqualification of E.W. Real Estate's ballot is not necessary.[12] We note, however, that even if we had concluded that E.W. Real Estate was not an insider as defined by the Code, E.W. Real Estate's vote to accept the Plan would still not count as it was not made in good faith and would be disqualified pursuant to § 1126(e). As stated above, "good faith" for the purposes of § 1126(e) was not defined in the Code and its definition was left to be developed by case law. According to case law, the definition of good faith appears to be "whether those parties in interest with respect to whom a motion for disqualification is made, had some ulterior reason for their action which looked to some special advantage to be gained thereby". 5 Collier on Bankruptcy, ¶ 1126.05[1] at 1126–19 (citing *City of Avon Park*). Courts have generally held that if a purchaser of claims in voting the assigned claims is pursuing an interest in addition to its interest as a creditor, bad faith may be found. *See supra* p. 385.

Prior to purchasing Middle Township's Class 2 claim, E.W. Real Estate was not a creditor of Debtor but, rather, a co-proponent of the Plan. Clearly, E.W. Real Estate did not purchase the Class 2 claim to protect its rights as a creditor. E.W. Real Estate bought the Class 2 claim only after Weingartner III learned from his father that the Plan could not be confirmed unless E.W. Real Estate, or some other entity, purchased the Class 2 claim and voted to accept the Plan. As stated earlier, E.W. Real Estate is to become Debtor's general partner as of the Effective Date of the Plan and is to receive management and construction fees from the construction of residential homes on Debtor's property. In purchasing the Class 2 claim and voting in favor of the Plan, E.W. Real

---

12. We also need not reach ERM's assertion that Weingartner's/EW Real Estate's purchase of the Class 2 claim was an equity contribution to Debt- or and, therefore, Class 2 is not an impaired class.

Estate was not acting to protect or maximize its rights as a creditor but, rather, was acting to preserve financial advantages it would receive if the Plan was confirmed and it became Debtor's general partner and collected the proposed management and construction fees.

We agree that § 1126(e) does not require that E.W. Real Estate act with "selfless disinterest", *Applegate*, 133 B.R. at 834, and the mere fact that E.W. Real Estate purchased the Class 2 claim to secure approval of the Plan does not of itself amount to bad faith. E.W. Real Estate, however, had an ulterior motive when it purchased the Class 2 claim to assure confirmation of the Plan under which it would become Debtor's general partner and receive fees. *See generally Allegheny International*, 118 B.R. at 289. Thus, without regard to the involvement of Weingartner in E.W. Real Estate, we find that E.W. Real Estate's vote accepting the Plan was made in bad faith and had it not been disregarded as the vote of an insider, would have been disqualified pursuant to § 1126(e).

An Order consistent with the foregoing Opinion will be entered.

### *ORDER*

**AND NOW,** this 18th day of May, 1994, upon consideration of the Motion of ERM Partnership to Strike Ballot pursuant to 11 U.S.C. § 1126(e) and for Related Relief (the "Motion"), and after notice and a hearing on March 15, 1994 and for the reasons stated in the accompanying Opinion, it is hereby **ORDERED** that:

1. Class 2 under the Plan is an insider class whose vote does not count for the purposes of satisfying § 1129(a)(10); and

2. It appearing that Debtor cannot meet the requirements for confirmation under § 1129 of the Bankruptcy Code because no noninsider impaired class has voted to accept the Plan, confirmation of the Plan which was scheduled for March 15, 1994 and continued pending this Court's ruling on the Motion, will be **DENIED.**