In re **FIGTER LIMITED, Debtor.**

**FIGTER LIMITED, Appellant,**

v.

**TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, Appellee.**

No. 96–55356.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1997.

Decided June 24, 1997.

---

Jeffrey L. Costell, Law Offices of Jeffrey L. Costell, Los Angeles, CA, for appellant.

Lawrence B. Gutcho, Loeb & Loeb, Los Angeles, CA, for appellee.

Before HUG, Chief Judge, and FERNANDEZ and RYMER, Circuit Judges.

FERNANDEZ, Circuit Judge.

Figter Limited, a Chapter 11 debtor and owner of Skyline Terrace, an apartment complex, appeals from the district court's affirmance of the bankruptcy court's decision that Teachers Insurance and Annuity Association of America (Teachers), the holder of a $15,600,000 promissory note secured by a first deed of trust on Skyline Terrace, bought twenty-one unsecured claims in good faith and that it could vote each one separately. We affirm.

## BACKGROUND

Figter filed a voluntary petition under Chapter 11 of the Bankruptcy Code. It owns Skyline Terrace, a 198–unit residential apartment complex located in Los Angeles. Teachers is a creditor. It holds a $15,600,000 promissory note executed by Figter. The note is secured by a first deed of trust on Skyline Terrace and by $1,400,000 of cash on hand. In fact, Teachers is Figter's only secured creditor and is the only member of Class 2 in a reorganization plan proposed by Figter. The plan contemplates full payment of Teachers' secured claim, but at a disputed rate of interest. Thus, under Figter's plan, Teachers' claim is not impaired. The plan calls for the impairment of Class 3 unsecured claims by payment at only 80% of their face value.

Teachers has opposed Figter's reorganization plan from its inception because, among other things, that plan contemplates the conversion of Skyline Terrace Apartments into condominiums, with payment to and partial releases by Teachers as the units sell. That could easily result in a property that was part condominium and part rentals, if the plan ultimately fails in operation.

Teachers proposed a plan of its own, which provided for the transfer of Skyline Terrace and the cash collateral to Teachers in satisfaction of its secured claim, as well as a payment of Class 3 unsecured claims at 90%. Teachers' plan was premised on the assumption that its claim was partly unsecured. However, on May 31, 1994, before the purchases of other claims took place, the bankruptcy court determined that Skyline Terrace had a value of $19,300,000. Thus, Teachers' claim in the amount of $17,960,000 was fully secured. It did not thereafter pursue its plan. From October 27, 1994 until October 31, 1994, Teachers purchased twenty-one of the thirty-four unsecured claims in Class 3 at one hundred cents on the dollar, for a total purchase price of $14,588.62. Teachers had made the same offer to all of the Class 3 claim holders, but not all accepted it. The offer remained open. Teachers then filed notices of transfer of claims with the court, as is required under Bankruptcy Rule 3001(e)(2). Those notices were served on all affected parties, including Figter. No objections were filed by the unsecured creditors. The district court upheld the bankruptcy court's determination regarding Teachers' purchase of the unsecured claims. As a result, Figter's plan is unconfirmable because it is unable to meet the requirements of 11 U.S.C. § 1129(a)(10); there will not be an impaired, consenting class of claims. That will preclude a "cram down" of Teachers' secured claim under 11 U.S.C. § 1129(b). Figter has appealed in an attempt to avoid that result.

## STANDARD OF REVIEW

We do not give deference to the district court's decision or determinations. *See Friedkin v. Sternberg (In re Sternberg),*

85 F.3d 1400, 1404 (9th Cir.1996); *Robertson v. Peters (In re Weisman)*, 5 F.3d 417, 419 (9th Cir.1993); *Wien Air Alaska, Inc. v. Bachner*, 865 F.2d 1106, 1108 (9th Cir.1989). However, we review the bankruptcy court's conclusions of law de novo and uphold its findings of fact unless they are clearly erroneous. *See Feder v. Lazar (In re Lazar)*, 83 F.3d 306, 308 (9th Cir.1996); *Weisman*, 5 F.3d at 419. Here we are asked to review the bankruptcy court's determination that Teachers acted in good faith when it purchased the claims of certain creditors and that it can vote each one separately.

■ To the extent that our review requires us to define the general parameters of a good faith determination, we are reviewing a question of law. To the extent that we must review a pure historical fact determination, we are reviewing a question of fact. *See Boone v. United States*, 944 F.2d 1489, 1492 (9th Cir.1991). But, a determination of good faith can partake of both, and we often review mixed questions of law and fact de novo. *See id.* Nevertheless, a decision that someone did or did not act in good faith is one where the determination is "an essentially factual inquiry" and is driven by the "data of practical human experience." *United States v. McConney*, 728 F.2d 1195, 1203–04 (9th Cir.1984) (en banc) (citations omitted). For that reason, we have, in various contexts, declared that we will review good faith determinations for clear error. *See, e.g., L.K. Comstock & Co., Inc. v. United Eng'rs & Constructors Inc.*, 880 F.2d 219, 232 (9th Cir.1989) (decision regarding "good faith" for covenant of good faith and fair dealing purposes is reviewed for clear error); *Mortgage Mart, Inc. v. Rechnitzer (In re Chisum)*, 847 F.2d 597, 600 (9th Cir.1988) (for sanctions purposes "good faith" is a key factual determination reviewed for clear error); *cf. SKS Die Casting and Machining, Inc. v. NLRB*, 941 F.2d 984, 991 (9th Cir.1991) (NLRB decision regarding "good faith" bargaining is a mixed question of law and fact which we review for substantial evidence). Therefore, we will review the bankruptcy court's ultimate good faith determination for clear error.

## DISCUSSION

Figter asserts that Teachers should be precluded from voting its purchased Class 3 claims because it did not buy them in good faith. Figter also asserts that even if the claims were purchased in good faith, Teachers cannot vote them separately, but is limited to one total vote as a Class 3 creditor. If Figter were correct in either of its assertions, it could obtain Class 3 approval of its plan and enhance its chances of cramming down Teachers' Class 2 claims. But Figter is not correct.

### A. *Good Faith.*

■ The Bankruptcy Code provides that "[o]n request of a party in interest, and after notice and a hearing, the court may designate any entity whose acceptance or rejection of [a] plan was not in good faith, or was not solicited or procured in good faith or in accordance with the provisions of this title." 11 U.S.C. § 1126(e). In this context, designate means disqualify from voting. The Bankruptcy Code does not further define the rather murky term "good faith." That job has been left to the courts.

The Supreme Court brought some clarity to this area when it decided *Young v. Higbee Co.*, 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890 (1945). In *Young*, the Court was discussing the predecessor to § 1126(e) when it declared that if certain persons "had declined to accept [the] plan in bad faith, the court, under section 203 could have denied them the right to vote on the plan at all." *Id.* at 210–11, 65 S.Ct. at 598 (footnote omitted). It went on to explain that the provision was intended to apply to those "whose selfish purpose was to obstruct a fair and feasible reorganization in the hope that someone would pay them more than the ratable equivalent of their proportionate part of the bankrupt assets." *Id.* at 211, 65 S.Ct. at 598. In other words, the section was intended to apply to those who were not attempting to protect their own proper interests, but who were, instead, attempting to obtain some benefit to which they were not entitled. *See also Insinger Machine Co. v. Federal Support Co. (In re Federal Support Co.)*, 859 F.2d 17, 19 (4th Cir.1988). While helpful,

those reflections by the Court do not fully answer the question before us. Other courts have further illuminated the area.

■ If a person seeks to secure some untoward advantage over other creditors for some ulterior motive, that will indicate bad faith. *See In re Marin Town Ctr.*, 142 B.R. 374, 378–79 (N.D.Cal.1992). But that does not mean that creditors are expected to approach reorganization plan votes with a high degree of altruism and with the desire to help the debtor and their fellow creditors. Far from it.

> If a selfish motive were sufficient to condemn reorganization policies of interested parties, very few, if any, would pass muster. On the other hand, pure malice, "strikes" and blackmail, and the purpose to destroy an enterprise in order to advance the interests of a competing business, all plainly constituting bad faith, are motives which may be accurately described as ulterior.

*In re Pine Hill Collieries Co.*, 46 F.Supp. 669, 671 (E.D.Pa.1942). That is to say, we do not condemn mere enlightened self interest, even if it appears selfish to those who do not benefit from it. *See id.*

■ Thus, if Teachers acted out of enlightened self interest, it is not to be condemned simply because it frustrated Figter's desires. That is true, even if Teachers purchased Class 3 claims for the very purpose of blocking confirmation of Figter's proposed plan. *See 255 Park Plaza Assocs. Ltd. Partnership v. Connecticut General Life Ins. Co. (In re 255 Park Plaza Assocs. Ltd. Partnership)*, 100 F.3d 1214, 1218–19 (6th Cir.1996). That self interest can extend even further without being an ulterior motive. It has been held that a creditor commits no wrong when he votes against a plan of a debtor who has a lawsuit pending against the creditor, for that will not, by itself, show bad faith. *See Federal Support Co.*, 859 F.2d at 20; *see also In re A.D.W., Inc.*, 90 B.R. 645, 651 (Bankr.D.N.J.1988); *In re Landau Boat Co.*, 8 B.R. 432, 436 (Bankr.W.D.Mo.1981). It has also been held that no bad faith is shown when a creditor chooses to benefit his interest as a creditor as opposed to some unrelated interest. *See In re Landing Assocs., Ltd.*,

157 B.R. 791, 803 (Bankr.W.D.Tex.1993); *In re Peter Thompson Assocs., Inc.*, 155 B.R. 20, 22 (Bankr.D.N.H.1993). And the mere fact that a creditor has purchased additional claims for the purpose of protecting his own existing claim does not demonstrate bad faith or an ulterior motive. "As long as a creditor acts to preserve what he reasonably perceives as his fair share of the debtor's estate, bad faith will not be attributed to his purchase of claims to control a class vote." *In re Gilbert*, 104 B.R. 206, 217 (Bankr.W.D.Mo. 1989).

Courts, on the other hand, have been sensitive to situations where a company, which was not a preexisting creditor, has purchased a claim for the purpose of blocking an action against it. They have seen that as an indication of bad faith. *See In re Keyworth*, 47 B.R. 966, 971–72 (D.Colo.1985). The same has been true where creditors were associated with a competing business and desired to destroy the debtor's business in order to further their own. *See In re MacLeod Co., Inc.*, 63 B.R. 654, 655 (Bankr.S.D.Ohio 1986); *see also In re Allegheny Int'l, Inc.*, 118 B.R. 282, 289 (Bankr.W.D.Pa.1990). And when the debtor had claims against itself purchased by an insider or affiliate for the purpose of blocking a plan, or fostering one, that was seen as a badge of bad faith. *See In re Holly Knoll Partnership*, 167 B.R. 381, 389 (Bankr.E.D.Pa.1994) (fostering); *In re Applegate Property, Ltd.*, 133 B.R. 827, 834–35 (Bankr.W.D.Tex.1991) (blocking). Figter would have us add that in a single asset bankruptcy, claim purchasing activities, like those of Teachers, are in bad faith. It cites no authority for that, and we see no basis for establishing *that* as a per se rule.

■ In short, the concept of good faith is a fluid one, and no single factor can be said to inexorably demand an ultimate result, nor must a single set of factors be considered. It is always necessary to keep in mind the difference between a creditor's self interest as a creditor and a motive which is ulterior to the purpose of protecting a creditor's interest. Prior cases can offer guidance, but, when all is said and done, the bankruptcy court must simply approach each good faith determination with a perspicacity derived

from the data of its informed practical experience in dealing with bankrupts and their creditors.

Here, the bankruptcy court did exactly that. It decided that Teachers was not, for practical purposes, the proponent of an alternate plan when it sought to purchase the Class 3 claims. Nor, it found, did Teachers seek to purchase a small number of claims for the purpose of blocking Figter's plan, while injuring other creditors, even if it could do that in some circumstances. Rather, Teachers offered to purchase all Class 3 claims, and only some of those claimants' refusals to sell precluded it from doing so. Moreover, Teachers was a lender, not a competing apartment owner. It acted to protect its interests as Figter's major creditor. It reasonably feared that it could be left with a very complex lien situation, if Figter went forward with its plan. Instead of holding a lien covering the whole of the property, it could have wound up with separate fractured liens on various parts of the property, while other parts were owned by others. That could create a very undesirable mix of owners and renters and of debtors and nondebtors. Added to that was the actual use of cash, which was collateral for the debt owed to Teachers. It cannot be said that Teachers' concerns were irrational.

Based on all that was before it, the bankruptcy court decided that in this case Teachers was a creditor which acted in a good faith attempt to protect its interests and not with some ulterior motive. We cannot say that it erred in making that ultimate determination.

### B. *Voting.*

 Figter's fallback position is that even if Teachers did act in good faith, it must be limited to one vote for its twenty-one claims. That assertion is answered by the language of the Bankruptcy Code, which provides that:

A class of claims has accepted a plan if such plan has been accepted by creditors ... that hold at least two-thirds in amount and *more than one-half in number of the allowed claims* of such class held by creditors ... that have accepted or rejected such plan.

11 U.S.C. § 1126(c) (emphasis added). That language was interpreted in *Gilbert*, 104 B.R. at 211, where the court reasoned:

The formula contained in Section 1126(c) speaks in terms of the *number of claims*, not the number of creditors, that actually vote for or against the plan.... Each claim arose out of a separate transaction, evidencing separate obligations for which separate proofs of claim were filed. Votes of acceptance ... are to be computed only on the basis of filed and allowed proofs of claim.... [The creditor] is entitled to one vote for each of his unsecured Class X claims.

That same view was iterated in *Concord Square Apartments of Wood Cty, Ltd. v. Ottawa Properties, Inc. (In re Concord Square Apartments of Wood Cty., Ltd.)*, 174 B.R. 71, 74 (Bankr.S.D.Ohio 1994), where the court held that a creditor with "multiple claims, has a voting right for each claim it holds." We agree. It would not make much sense to require a vote by creditors who held "more than one-half in number of the allowed claims" while at the same time limiting a creditor who held two or more of those claims to only one vote. If allowed claims are to be counted, they must be counted regardless of whose hands they happen to be in.

Figter seeks some succor from the Supreme Court's indication in *Dewsnup v. Timm*, 502 U.S. 410, 419–20, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992), that ambiguous language in the Code should not be taken to effect a sea change in pre-Code practice. However, that does not help Figter's cause. In the first place, as we have indicated, the present language is not ambiguous. In the second place, the old law to which *Figter* refers relied upon a code section which required voting approval by a "majority in number of all creditors whose claims have been allowed." Bankruptcy Act of 1898, ch. 541, § 12, 30 Stat. 544, 549–50 (*repealed* 1938); *see In re Messengill*, 113 F. 366 (E.D.N.C.1902). It is pellucid that "a majority in number of all creditors" is not at all like "more than one-half in number" of all claims. The former focuses on claimants; the latter on claims.

Nor is our conclusion affected by cases where other sections of the bankruptcy code, or other acts by creditors, were involved. For example, the predecessor to 11 U.S.C. § 702 indicated that a creditor could vote for the trustee. In *In re Latham Lithographic Corp.*, 107 F.2d 749 (2d Cir.1939), there was an attempt to split a single claim into multiple claims for the purpose of creating multiple creditors who could vote in a trustee election. It is not surprising that the court did not permit that. *See id.* at 751. And in *In re Gilbert*, 115 B.R. 458, 461 (Bankr. S.D.N.Y.1990), the court held that an involuntary petition in bankruptcy must be filed by three creditors, and a single creditor with three separate claims is still one creditor. *See also In re Averil*, 33 B.R. 562, 563 (Bankr.S.D.Fla.1983). In fact, the involuntary petition section actually requires that there be three or more *entities*. *See* 11 U.S.C. § 303(b). Certainly, a creditor with three claims is still a single entity.

Of course, that is not to say that a creditor can get away with splitting one claim into many, but that is not what happened here. Teachers purchased a number of separately incurred and separately approved claims (each of which carried one vote) from different creditors. There simply is no reason to hold that those separate votes suddenly became one vote, a result which would be exactly the opposite of claim splitting.

Therefore, the bankruptcy court did not err.

### CONCLUSION

Figter hoped to obtain approval of a reorganization plan, which would require Teachers to thole what it saw as a diminution of its creditor's rights. Those hopes were dashed when Teachers bought up most of the Class 3 claims in an effort to protect its own Class 2 claim. Because the bankruptcy court determined that Teachers acted to protect its valid creditor's interest, rather than for ulterior motives, it held that Teachers had acted in good faith. That precluded designation of Teachers' purchased claims. The bankruptcy court also determined that Teachers could vote each of its twenty-one claims separately; it was not limited to a single vote. The district court affirmed those decisions. Because the bankruptcy court did not err in either its factual or its legal determinations, we agree with the district court and affirm the decision.

AFFIRMED.