In re Paula BALL, Debtor.

Bankruptcy No. 95 B 22563.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Aug. 27, 1996.

See also 201 B.R. 204.

Beth I. Solomon, Daniel A. Edelman, James O. Latturner, Edelman & Combs, Chicago, IL, Robert Adams, Robert J. Adams & Associates, Chicago, IL, for Debtor.

Thomas E. Raleigh, Raleigh, Helms & Finke, Chicago, IL, for Trustee.

Daniel J. Zollner, Jennifer Sucher, Lord, Bissell & Brook, Chicago, IL, for Nationscredit Financial Services Corporation.

## MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

On March 26, 1996, this Court issued a Memorandum Opinion ("March 26 Opinion") on the Trustee's objection to the Debtor's amended Schedule C claiming a Truth in Lending Act ("TILA") cause of action as exempt and the Trustee's motion to approve a $7,500 settlement of any TILA claims or other causes of actions the Debtor may have against Nationscredit Financial Services Corp. ("Nationscredit") arising out of two pre-petition loans. In the March 26 Opinion, this Court determined that: 1) the Debtor could amend her schedules to claim the TILA lawsuit currently pending in the district court as exempt; and 2) the amended schedules related back to the filing of this case. This Court was unable to decide whether the estate had any interest in the lawsuit that would permit the Trustee to settle the suit, since the value of the TILA claim was disputed. The Court's concern was that it would be improper for a bankruptcy trustee to accept a payment in settlement of a class action in which the estate had no interest.[1] Accordingly, this Court de-

1. In the March 26 Opinion, this Court discussed some of the issues related to settlement of indi- vidual claims, at a premium, by a class representative. Relying on well established authority,

ferred a final decision on the motions until after a hearing to value the TILA claim and any other exempted property.

On August 1, 1996, a hearing was held to determine the value of the TILA claim and whether the total claim could be exempted under the $2,000 "wild card" exemption. Based upon the evidence presented at that hearing, this Court concludes that the value of the TILA claim exceeds the $2,000 wildcard exemption and the estate, therefore, has an interest in the TILA claim that will permit the Trustee to go forward with the settlement. The Debtor is entitled to receive the first $2,000 (less the value of any other personal property claimed as exempt) from the proceeds of any settlement of the lawsuit.

The Trustee also filed a motion for the turnover of certain personal property from the Debtor including, cash and jewelry. For the reasons set forth below that motion will be granted in part and denied in part.

## BACKGROUND

Paula Ball obtained a consumer loan from Nationscredit on May 16, 1995 (Loan No. C42417393). As part of the transaction, Nationscredit sold Ms. Ball involuntary unemployment insurance. ("IUI"). Shortly thereafter, Ms. Ball requested additional funds and on May 19, 1995, Loan No. C42419233 was issued. Ms. Ball again purchased IUI as part of the transaction.

On October 23, 1995, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code and Thomas E. Raleigh was appointed Chapter 7 Trustee. On December 12, 1995, the Debtor filed a class action against Nationscredit in the district court, alleging violations of the TILA, the Illinois Consumer Installment Loan Act ("CILA"), the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA") and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPL") (the "Lawsuit"). The allegations in the complaint related to only the May 19 loan.

The Debtor filed Schedule C with the petition, but has amended it several times. The first amendment added the Lawsuit to Schedule C;[2] the subsequent amendments have changed the Debtor's estimate of the value of the Lawsuit and clarified what other property she is claiming as exempt under the wildcard exemption. The last Amended Schedule C, filed by the Debtor on the date of the hearing, claimed the Lawsuit, but not any other causes of action against Nationscredit, as exempt, and indicated that the Debtor would apply the balance of the $2000 wildcard exemption, if any, to a tax refund ($1,191) and a security deposit ($535). The Amended Schedule C also indicated that the Debtor did not intend to use the wildcard exemption to exempt $400 in cash that the Trustee alleges she had on hand as of the petition date and $667 vacation/sick time accrued as of the petition date and paid to her on March 21, 1996.

## I. VALUATION OF THE CLAIM

Nationscredit entered into settlement negotiations with the Trustee after the district court case was filed. Nationscredit initially offered $3,000 to settle all of the Debtor's claims against it. According to an in-house attorney for Nationscredit, Jeff Sewald, this

this Court stated that "any settlement proceeds over and above the value of the Debtor's individual claims would not be property of the estate, but property of the class." *Citing, Young v. Higbee*, 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890 (1945); *Certain–Teed Products Corp. v. Topping*, 171 F.2d 241 (2d Cir.1948). *Yaffe v. Detroit Steel Corp.*, 50 F.R.D. 481, 483 (N.D.Ill.1970) ("[T]he defendants might well be willing to pay the named plaintiffs a premium for the elimination of the class, a premium to which they are, of course, not entitled."); *Magana v. Platzer Shipyard Inc.*, 74 F.R.D. 61, 71 (S.D.Tex.1977) ("Because the named plaintiff and his counsel can therefore be unjustly enriched by the Rule 23 class allegation at the expense of the asserted class, receipt of the proceeds of any such individual settlement constitutes on its face a clear abuse of the class action concept."). Although this Court is now satisfied that the Debtor's individual claims have a settlement value of more than $2,000, it is not for this Court to decide whether any portion of any settlement proceeds belong to the class. That decision should be made by the district court since it involves issues under Fed.R.Civ.P. 23.

2. The Lawsuit had not been filed in the district court when the Debtor filed for bankruptcy. The March 26 Opinion addresses the issues related to post-petition filing of the Lawsuit and amending the schedules to claim it as exempt.

amount was based upon approximately $1,000 statutory damages for each of the May 16 and May 19 loans, with the balance to cover the Trustee's fees. The Trustee made a counter offer of $7,500 in order to have remaining proceeds to distribute to creditors. After considering its costs to defend this suit and the possibility that it would also be liable for the plaintiff's attorneys' fees (an award of attorneys' fees is mandatory under TILA), Nationscredit accepted the Trustee's counter offer.[3]

Although the settlement was contingent upon dismissing the district court class action, Mr. Sewald testified that no amount was being offered to settle the class action. He believed that the Debtor had three claims against Nationscredit: one arising from the May 16 loan, one arising from the May 19 loan and a RICO "loan flipping" claim. However, he never considered settling the claims separately and, therefore, never valued the claims individually because Nationscredit was interested in disposing of all possible claims the Debtor had against it. Although the settlement negotiations between Nationscredit and the Trustee took place in January, after the Lawsuit had been filed, Mr. Sewald testified that he would have offered the same amount to settle the claims even if a lawsuit had not yet been filed.

The Debtor called O. Randolph Bragg, an attorney licensed in Illinois, with over 20 years of experience representing consumers in various consumer cases, including class action lawsuits under the TILA, to testify on the value of the Lawsuit. Nationscredit also relied upon Mr. Bragg to establish the amount of statutory damages recoverable. Mr. Bragg testified that the maximum damages recoverable by the Debtor under the

Lawsuit (for an individual claim) were between $1,200 to $1,400, as follows:

| Statute | Damages Recoverable |
|---|---|
| TILA | $993 + $65.75 [4] |
| CFA | [$65.75] |
| CILA | $148.80 |
| UTPL | $197.25 [less $65.75 if recovered above] |

Once a violation of TILA is established, attorneys' fees will be awarded. Mr. Bragg explained that the fees are only payable to the attorney and a pro se plaintiff would not be entitled to recover the value of the fees.

Mr. Bragg estimated the Debtor's likelihood of prevailing at 75%, although he said that this is a case of first impression.[5] He would have recommended settling an individual claim for $700–$800, plus costs and fees, but he acknowledged that defendants are sometimes willing to pay more than the statutory damages to avoid the cost of defending a suit. In his experience, however, he has never had a defendant offer to pay 5 times the maximum possible damages before a case was filed.

Mr. Bragg concluded that, as of the petition date, the Debtor's claim arising solely from the May 19 loan was worth only $50. This figure was based on a fair market value approach to valuing a claim, i.e. what could the claim be sold for, and since there is no market for buying and selling claims he gave it only a nominal value.

## DISCUSSION

The first issue to be decided by this Court is how to value a cause of action. Two methods of valuing the Debtor's claim were presented: fair market value based upon what the claim could be sold for and settlement value. Since there is generally no market for buying/selling consumer causes of actions, this Court rejects that method of valuation and the Debtor's expert testimony

---

3. Mr. Sewald estimated the cost of defending an individual claim under TILA to be a minimum of $20,000.

4. The $65.75 are actual damages under TILA, CFA and UTPL. However, the plaintiff is entitled to recover those actual damages under only one of the statutes.

5. Mr. Bragg stated that this particular claim was based on non-disclosure of involuntary unemployment charges, which is systemic to the form. According to Mr. Bragg, lenders are generally willing to fight systemic claims "to the hilt." For this reason he said many attorneys will not take individual claims under TILA. Although attorney fees are recoverable, the amount is discretionary and he would not have taken this case knowing the defendant would spend $20,000 to $30,000.

that the TILA claim has a fair market value of $50.00. *See Wissman v. Pittsburgh Nat'l Bank*, 942 F.2d 867, 871 (4th Cir.1991) ("A cause of action, of course, is an asset that is not easily valued because there is no market where it is bought and sold. Thus, prior to judgment, a cause of action's value is unliquidated and contingent, and claiming a specific dollar exemption is, at best, speculation.")

■ Although settlement value is also somewhat speculative, the settlement amount is agreed upon only after both parties have considered the plaintiff's potential recovery and likelihood of success and costs of defense. In this case, Nationscredit and the Trustee agreed to a settlement of $7,500. Although the Trustee was more concerned with obtaining enough to make a distribution to creditors, Nationscredit did rationally value the claim. Its agreement took into consideration statutory damages of approximately $1,400 per loan, the certainty that the plaintiffs' fees and costs would be awarded if the plaintiff prevailed and the costs of defense—all rational factors to have considered.

■ It is not necessary for this Court to set an exact dollar value on the individual TILA claim; indeed, any attempt to do so might be construed as infringing on the district court's discretion, should the district court decide to apply Rule 23 principles to Nationscredit's motion to dismiss the class action.[6] All that is required here is for this Court to ascertain whether the value of the claim exceeds the Debtor's wildcard exemption. If it does, then the estate has an interest in the Lawsuit, which the Trustee may pursue. *See Wissman* at 871–72 (finding that the district court unnecessarily set a value on the Debtor's interest and instead concluding that the court only needed to find that the estate had an interest sufficient to give it standing to pursue the cause of action.) Based upon the evidence presented at the hearing it is clear that Nationscredit could rationally decide to settle the Debtor's claims for more than $2,000 and its witness testified that it did so. Therefore, for the limited present purposes, the Court finds that the value of the TILA claim exceeds $2,000.

■ The Debtor has, however, argued that the settlement proposed by Nationscredit and the Trustee includes three claims and that she, in her latest version of Schedule C, is only exempting the claim arising from the May 19 loan. Nationscredit's witness on the other hand, testified the claims were not separately valued. As a practical matter, Nationscredit will not agree to settle just one claim and leave itself subject to the same exposure and costs in a similar matter; settlement is an all or nothing proposition.

In effect, the Debtor is attempting to withhold one critical piece of a package. Without that piece, the package is worth nothing; with it, the package is worth at least $2,000. It follows, therefore, that the piece itself is worth at least $2,000.

The Debtor has a right to exempt her interest in the TILA claim, but no more than her interest. So long as she will receive $2,000 for that interest, her rights are satisfied. *See Wissman* (rejecting debtors' argument that cause of action was exempted in its entirety and finding that the debtors were only entitled to recover an amount up to the statutory exemption); *In re Bronner*, 135 B.R. 645 (9th Cir. BAP 1991) (finding that the debtors' claimed exemption in a lawsuit could not exceed the statutory amount and any surplus belonged to the estate).

## II. TURNOVER MOTION

■ On July 1, 1996, the Trustee filed a motion requesting that the Debtor be required to turn over certain personal property, including, jewelry, $400 in cash and $667 accrued sick/vacation pay. At the commencement of the hearing, the jewelry was voluntarily turned over to the Trustee. The portion of the motion related to turnover of the jewelry is, therefore, moot.

The Trustee introduced evidence showing that the morning after the petition was filed, the Debtor deposited $400 into her bank

---

6. Even for purposes of deciding the motion to approve the settlement, it is only necessary to decide whether the settlement is within a range of reasonable values. *In re Media Central, Inc.*, 190 B.R. 316, 321 (E.D.Tenn.1994).

account. The Debtor was unable to explain where or when she obtained the cash. Since the deposit was made at 8:40 a.m., it is probable that the Debtor had this money the preceding day (when she filed the petition). The cash, therefore, should have been included on the schedules and is property of the estate. Since the last amended Schedule C indicates that the Debtor is not claiming this cash as exempt, the Trustee is entitled to recover this property. Accordingly, a turnover order will be entered in favor of the Trustee.

■ The Trustee also called the president of the Debtor's former employer, Mr. Joseph Pisula. He testified that as of October 23, 1995, the Debtor had accrued 11 vacation/sick days, worth $667.60. On March 21, 1996, the Debtor requested and was paid for that time, plus 2.5 days that had accrued post-petition. The Debtor has not claimed the time accrued pre-petition as exempt and the Trustee requests that $667.60 be returned to the estate.

Mr. Pisula testified that the company had no written policy concerning payment for accrued sick/vacation time. Although he generally paid an employee for the accrued time if requested, he acknowledged that employees had no absolute right to demand payment and the decision was within his discretion. He could not state what his response would have been if a trustee had requested payment of Ms. Ball's accrued time on the petition date.

Since payment was discretionary and there was no contractual right to receive cash in lieu of using the sick/vacation days, this Court finds that the estate had no legal or equitable interest in the accrued time and it did not become property of the estate. *See In re Knight*, 164 B.R. 372 (Bankr.S.D.Fla. 1994) (contingent interests included in property of the estate, but where payment is discretionary the potential distribution is not property of the estate); *In re Dias*, 37 B.R. 584, 586 (Bankr.D.Idaho 1984). Accordingly,

the Trustee's motion for turnover of $667.60 arising from accrued sick/vacation days is denied.[7]

## CONCLUSION

With respect to the settlement, this Court's concern from the outset has been that the bankruptcy estate not be improperly used to circumvent Rule 23. From a bankruptcy perspective, at least as this case has played out, satisfaction of that concern required a determination that the value of Debtor's interest in the TILA claim exceeded her exemption, or, put the other way, that the estate had some legitimate pecuniary interest in that claim. That determination has now been made. But all issues under Rule 23 are unresolved, because this Court is without power to resolve them. That is for another forum.

Appropriate orders will be entered.

## ORDER

This matter comes before the Court on the objections of the Chapter 7 Trustee, Thomas E. Raleigh, and Nationscredit Financial Services Corp. ("Nationscredit") to the Debtor's claim that a cause of action against Nationscredit alleging violations of, *inter alia,* the Truth In Lending Act ("Lawsuit"), is exempt under the Illinois "wild card" exemption (735 ILCS 12–1001(b)). For the reasons set forth in the Memorandum Opinion of even date herewith the Court finds that the value of the Lawsuit exceeds $2,000. Accordingly, **IT IS HEREBY ORDERED** that the objections are overruled and the Debtor is entitled to exempt up to $2,000 of the proceeds of any settlement of the lawsuit. **IT IS FURTHER ORDERED** that the Trustee's Motion to Vacate the No Asset Report is granted and the Trustee may proceed to administer the estate's assets, including the estate's interest in any causes of action against Nationscredit.

## ORDER

This matter comes before the Court on the motion of the Chapter 7 Trustee, Thomas E.

---

7. There was also an issue raised whether 1½ sick days used by the Debtor post-petition should be deducted on a "last in/last out" or "first in/first out" basis. Mr. Pisula testified that he would generally allocate days taken to the first accrued. However, since this Court has concluded that none of the accrued time became property of the estate, it is unnecessary to decide how the days used post-petition should be accounted for.

Raleigh, for the turnover of personal property. For the reasons set forth in the Memorandum Opinion of even date herewith, **IT IS HEREBY ORDERED** that within 10 days the Debtor turnover $400 in cash that 'is property of the estate. **IT IS FURTHER ORDERED** that the Trustee's Motion for turnover of $667.60 in accrued vacation/sick pay is denied.

